## Docket No. 24-0475

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———————— • ————————

JOHN DOE, an individual,

*Plaintiff-Appellant,*

v.

GRINDR INC.; GRINDR LLC,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court for Los Angeles, Central California,*
*No. 2:23-cv-02093-ODW-PD · Honorable Otis D. Wright*

## BRIEF OF APPELLANT

<br />

CARRIE GOLDBERG
NAOMI E. LEEDS
ROXANNE RIMONTE
CA GOLDBERG, PLLC
16 Court Street, 33rd Floor
Brooklyn, New York 11241
(646) 666-8908

*Attorneys for Appellant,*
*John Doe, an individual*

 COUNSEL PRESS · (213) 680-2300     PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

A.   STATEMENT OF JURISDICTION ............................................... 1

B.   INTRODUCTION .......................................................................... 1

C.   ISSUES PRESENTED FOR REVIEW ......................................... 4

D.   STATEMENT OF THE CASE ...................................................... 4

    (1)   Facts .................................................................................. 4

    (2)   The Operative Complaint ................................................. 7

    (3)   Grindr's Motion to Dismiss ............................................ 10

    (4)   The District Court Decision ............................................ 11

E.   SUMMARY OF ARGUMENT ................................................... 12

F.   ARGUMENT ............................................................................... 14

    (1)   Standard of Review ........................................................ 14

    (2)   The District Court's Decision Runs Afoul of the Text, Precedent, and Purpose of the Communications Decency Act. .................................. 14

        (a)   Section 230 Immunity in the Ninth Circuit Applies Only when the Plaintiff Seeks to Treat the Platform as a Publisher or Speaker. ................................................. 17

        (b)   The Ninth Circuit Vehemently Rejects a But-For Test in Determining whether a Platform is Being Treated as a Publisher/Speaker. ................................................. 20

        (c)   The District Court Erred in Applying the Second Circuit's But-For Test. ............................................. 21

            (i)   Doe does not Seek to Treat Grindr as a Publisher or Speaker. ................................................. 23

            (ii)   The District Court Incorrectly Relied on *Dyroff* for the Prong 2 Section 230 Analysis. ............................ 24

            (iii)   The District Court Erred in Ignoring *Lemmon* for its Prong 2 Analysis. ................................................. 27

i

(d) The Court Erred in Granting Immunity because Third Party Content is Not a Basis of Doe's Claims. ........................ 34

(3) The District Court Erred in Dismissing Doe's TVPRA Claims. ........ 35

(a) Doe States a Direct Perpetrator Claim under 18 U.S.C. § 1591(a)(1) ................................................................. 36

(b) Doe States a Beneficiary Claim under 18 U.S.C. § 1591(a)(2) ................................................................. 40

(c) The District Court Relied on Manifest Errors of Fact to liken Doe's Claims to *Reddit* instead of *Omegle*. ..................... 41

G. CONCLUSION ............................................................. 44

# TABLE OF AUTHORITIES

**Page**

*AE ex rel. Hernandez v. County of Tulare*,
 666 F.3d 631 (9th Cir. 2012) .................................................................14

*A.M. v. Omegle.com LLC*,
 No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. Feb. 2, 2023) ............*passim*

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................14

*Barnes v. Yahoo!, Inc.*
 570 F.3d 1096 (9th Cir. 2009) .......................................................*passim*

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................15

*Bride v. Snap, Inc.*,
 No. 2:21-cv-06680-FWS-MRW, 2023 WL 2016927
 (C.D. Cal. Jan. 10, 2023) .................................................................29, 33

*Does 1-6 v. Reddit, Inc.*,
 No. SACV 21-00768 JVS (KES)
 2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)..........................10, 40, 41

*Doe v. Facebook, Inc.*
 142 S. Ct. 1087 (2022)..........................................................................12

*Doe v. Internet Brands*,
 824 F.3d 846 (9th Cir. 2016) ..........................................10, 18, 23, 28

*Doe v. Twitter*,
 No. 22-15103 & 22-15104,
 2023 WL 3220912 (9th Cir. May 3, 3023)...................................*passim*

*Duhaime v. Ducharme*,
 193 F.3d 1126 (9th Cir. 1999) .............................................................12

*Dyroff v. Ultimate Software Grp. Inc.*,
 934 F.3d 1093 (9th Cir. 2019) .......................................................*passim*

*Fair Hous. Council v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) *en banc*................................................17

*Fields v. Twitter, Inc.,*
217 F. Supp. 3d 1116 (N.D. Cal. 2016) ..............................................................33

*Ginsberg v. Google Inc.,*
586 F. Supp. 3d 998 (N.D. Cal 2022) ................................................................33

*Gonzalez v. Google LLC,*
143 S. Ct. 1191 (2023) ......................................................................................12

*Herrick v. Grindr LLC,*
765 F. App'x 586 (2d Cir. 2019) ...............................................10, 11, 13, 19, 20

*HomeAway.com, Inc. v. City of Santa Monica,*
918 F. 3d 676 (9th Cir 2019) .......................................................................*passim*

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,*
No. 4:22-MD-03047-YGR, 2023 WL 7524912 (N.D. Cal. Nov. 14,
2023), *motion to certify appeal denied,* No. 4:22-MD-03047-YGR,
2024 WL 1205486 (N.D. Cal. Feb. 2, 2024) .............................................*passim*

*Kimzey v. Yelp! Inc.,*
836 F.3d 1263 (9th Cir. 2016) ..........................................................................25

*Lancaster v. Alphabet Inc.,*
2016 U.S. Dist. LEXIS 88908,
2016 WL 3648608 (N.D. Cal. July 8, 2016) .....................................................33

*Lemmon v. Snap, Inc.,*
995 F.3d 1085 (9th Cir. 2021) .....................................................................*passim*

*L.W. v. Snap Inc.*
2023 WL 3830365 (S.D. Cal. June 5, 2023) ...............................................33, 34

*Malwarebytes, Inc. v. Enigma Software Grp. U.S.,*
141 S. Ct. 13 (2020) ..........................................................................................12

*Neville v. Snap, Inc.,*
Case No. 22STCV33500 (Cal. Superior Ct. Jan. 2, 2024) ....................15, 16, 17

*Rowe v. Educ. Credit Mgmt. Corp.,*
559 F.3d 1028 (9th Cir. 2009) ..........................................................................14

*Sikhs for Just. Inc. v. Facebook, Inc.,*
697 F. App'x. 526 (9th Cir. 2017) ....................................................................33

*Twitter, Inc. v. Taamneh*,
  143 S. Ct. 1206 (2023) ........................................................................12

*Ziencik v. Snap, Inc.*,
  No. CV 21-7292-DMG (PDx), 2023 WL 2638314
  (C.D. Cal. 15 Feb. 3, 2023) ...........................................................20, 31

## Statutes and Other Authority

18 U.S.C. § 1591 .......................................................................*passim*

18 U.S.C. § 1595 ...............................................................2, 7, 9, 35

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1332 ................................................................................1

47 U.S.C. § 230 .........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .............................................................*passim*

Kosseff, Jeff, *A User's Guide to Section 230, and a Legislator's Guide to Amending it (or Not)* (August 14, 2021). Berkeley Technology Law Journal, Vol. 37, No. 2, 2022 ........................................................................15

## A.    STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because a notice of appeal was timely filed (ER-197) in a case arising in the district court under its diversity jurisdiction. 28 U.S.C. § 1332.

## B.    INTRODUCTION

This decade has seen historic numbers of male survivors of child sexual abuse turn to American courts to shine light on the legacy of the Catholic Church and Boy Scouts of America. While lawmakers, courts, and victims have come together to expose these widespread institutional abuses, a new generation of trauma victims is budding at scale.

Grindr is the world's largest hook-up application for individuals who identify as LGBTQ+. For years, Grindr Inc. and Grindr LLC (together, "Grindr") offered its product to children, propelling them into in-person sexual encounters with adults. Not only has Grindr long known its product was causing children to be raped, but it also actively promoted it to them through social media campaigns on TikTok and Instagram which featured adolescent-appearing individuals at middle and high school. Research estimates that the majority of gay sexually active boys aged 14 to 17 have their first sexual experience with an adult stranger they met on Grindr. Grindr not only builds on the tradition of institutions turning a blind eye to the sexual abuse of boys, but extracts a handsome profit.

1

Appellant John Doe brought suit against Grindr for product defects and sex trafficking, asserting claims of strict product liability, negligence, negligent misrepresentation, and violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595. As a fifteen-year-old boy in a rural community, Doe thought he could meet other gay kids on Grindr— ones who wouldn't bully him for being Autistic or gay. Instead, the day he downloaded the app, he was matched with a man who raped him and then was raped with varying degrees of force by three other men the following three consecutive days.

Doe appeals from the district court's dismissal of his complaint on Grindr's Rule 12(b)(6) motion. Grindr claims it is but a "forum for speech," ER-157, and therefore entitled to immunity under 47 U.S.C. § 230 ("Section 230"). Neither is true. Grindr manufactured a complex product with sophisticated features that combine social media, geo-location, advertising, matchmaking, and direct messaging. Grindr catapults people into real-world couplings. Doe's five state claims do not treat Grindr as a publisher of third-party content. The Ninth Circuit has unequivocally determined that internet companies are not entitled to Section 230 immunity for claims grounded in product liability or negligence where the duty breached is unrelated to a publishing function. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021).

In an order that erroneously applies the Second Circuit's "but-for" test to platform liability, the district court broadened the immunity offered to platforms under 47 U.S.C. § 230 ("Section 230") far beyond Ninth Circuit precedent.

The district court concluded erroneously that Doe's claims treated Grindr as the "publisher or speaker" of content provided by another. *Dyroff,* 934 F.3d at 1098 (alteration in original) quoting *Barnes*, 570 F3d at 1102). In doing so, the district court discarded the Ninth Circuit's well-worn test for applying 230 immunity— whether the duty breached relates to a publishing function. Swelling the statute beyond even the Second Circuit's bloat, the district court suggested the harm need not even be tied to third party content. But rather, Section 230 immunity applies simply when the harm "flow[s] solely from the product software." The district court also erred by concluding that the geolocation data the application extracts from a person's phone is that person's published content.

Finally, the district court erred in dismissing Doe's trafficking claims saying they were too "attenuated" despite Doe's comprehensive allegations that Grindr, a business that has the objective of facilitating in-person sexual occasions, knowingly recruits minors to its app and knowingly derives financial benefit from the sexual abuse of minors.

The district court's order should be reversed, and the case remanded for further proceedings.

## C.  ISSUES PRESENTED FOR REVIEW

1.  In determining Section 230 immunity, did the district court err in applying a but-for test as to whether Plaintiff's claims treat Grindr as a publisher/speaker?

2.  Must a plaintiff plead that the platform's own content is the but-for cause of their injury—even when the plaintiff is not alleging a content-derived harm? And if so, is geolocation data that an application extracts off a user's device third-party content?

3.  Did the district court err in concluding that Doe's TVPRA claims should be dismissed for being too "attenuated" where Doe alleges Grindr knowingly recruits minors, including Doe, to its app knowingly deriving financial benefit from the sex abuse of minors?

## D.  STATEMENT OF THE CASE

### (1)  <u>Facts</u>

Grindr's product, the "Grindr App," is the world's largest online product that matches LGBTQ+ people for in-person sexual encounters. Users create a unique profile with their interests and sexual preferences ER-171. Grindr extracts users' locations and matches users according to their proximity to one another. ER-171, 184-85. Grindr makes its money through its in-app advertisements and tiered subscriptions. ER-170. The more people who use its product and the more time they

4

spend on it, the more money Grindr makes. *Id*. To set up a Grindr account, Grindr asks for an email address and a birth date. ER-170. Grindr allows users to choose whatever birth date they want. ER-170. Grindr claims its users must be over age eighteen but markets the Grindr App to children and allows children to create accounts without parental permission or supervision. ER-168, 171-74.

Grindr then matches the children with adult users for in-person sexual encounters. ER-168, 171-74. Grindr has long known that its product matches children and adults for sexual encounters and has been the subject of various lawsuits, government investigations, and news articles. ER-179-82. In 2018, the Journal of Adolescent Health reported that more than half of sexually active gay and bisexual boys had their first sexual experience with adults they'd met on Grindr. ER-174. By 2015, over 100 men across the United States – including police officers, priests, and teachers – faced charges related to sexually assaulting minors or attempting sexual activity with youth they met on Grindr. ER-181. Grindr has seemingly digested this alarming information about youth using its product not as an impetus to make its product safer, but as a marketing opportunity. ER-175. Grindr uses social media to target its marketing to children, in part, through the large followings it has cultivated on social media platforms populated by youth—TikTok and Instagram. ER-171-74. Grindr uploads its own video content of adolescent-

appearing people in junior high and high school settings for its hundreds of thousands of followers. ER-171-74.



In April 2019, Doe, a closeted 15-year-old gay boy living with autism and ADHD isolated in a small town, fell victim to Grindr's juvenile marketing. ER-175-76. He was desperate to meet other gay kids and naively thought he could find friends on Grindr. ER-168. Without his parents' knowledge or permission, he downloaded the app, complied with a prompt that told him he needed to be 18 or older, and created a profile. ER-175-76. Doe was never asked to provide any sort of age verification. ER-175. Grindr extracted Doe's location data from his phone and

then offered proximately located users to him and offered him to nearby adults. ER-171. The day Doe downloaded Grindr, he was matched with an adult nearby his school. ER-176-77. The man demanded Doe send a photo and come over. *Id*. Doe was orally and anally raped. ER-176. Stunned, traumatized, and confused, Doe returned to Grindr. ER-176. Over four consecutive days, Grindr matched Doe with four adults, each of whom raped him with varying degrees of force and violence. ER-176-77. Three of the four were criminally convicted for crimes against Doe. ER-177. Doe experienced significant trauma and distress from the rapes, causing him to attempt suicide, drop out of school, and require inpatient hospitalization. ER-178.

### (2)    The Operative Complaint

On March 10, 2023 Doe filed a case against Grindr in California State Court alleging six causes of action against Grindr under theories of strict products liability, negligence, negligent misrepresentation, and trafficking under 18 U.S.C. § 1595(a). ER-183-94. Shortly thereafter, as a matter of right, Doe filed a First Amended Complaint, the operative complaint.

Doe's first cause of action was for strict products liability – defective design – and pleaded that Grindr was used in its intended or a reasonably foreseeable manner. ER-183-86. The app is defective in that it matches adults with children for in-person sexual encounters which are criminally illegal. The geolocation data that it extracts from users' phones recommends geographically desirable matches, but

without regard for the large numbers of children that inevitably get matched with its adult userbase. ER-184. Doe pleaded other safer alternative designs that were mechanically feasible to Grindr which could have prevents injuries to him such as deployment of effective age verification tools. ER-185.

Doe's second cause of action was for strict products liability – defective manufacturing – and pleaded that the coding and operations of Grindr contributed to an unreasonably dangerous product that matches children and adults for expected sexual encounters. ER-186-87.

Doe's third cause of action was for strict products liability – defective warning – and pleaded that Grindr poses a risk to children and that an ordinary consumer, such as Doe, could not have recognized the potential risks posed by Grindr. ER-187. Although a child using a purportedly 18+ app, Grindr's marketing geared toward youth and its knowledge that youth use the product make Doe an ordinary consumer. ER-177-82. Grindr failed to adequately warn or instruct him about the potential risk of rape. ER-187.

Doe's fourth cause of action was for negligence. ER-188. Grindr owes a duty to exercise reasonable care and to not aid in the rape of children. *Id*. Grindr breached that duty by deliberately marketing its product to children, enabling kids to frictionlessly use the app, and matching them with adults for in-person sexual encounters. *Id*.

8

Doe's fifth cause of action is negligent misrepresentation. ER-188-89. Grindr negligently misrepresented that the Grindr App is designed to create a safe and secure environment for its users, projecting that false image to children, but had no reasonable grounds for believing the representations to be true. *Id*. Doe relied on this misrepresentation when he downloaded Grindr and was assaulted.

Doe's sixth cause of action is for violation of sections TVPRA §§ 1591 and 1595. ER-189-94. Doe pleaded that Grindr is liable both under subsection (a)(1) as a direct venture and under subsection (a)(2) as a beneficiary of others' trafficking. *Id*. Doe claimed that, pursuant to (a)(1), Grindr "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes or solicits persons under the age of 18 knowing and causing them to be used in commercial sex acts." ER-189-90. [The TVPRA defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." § 1591(e)(3).] Doe claimed that Grindr is an advertising platform that collects advertising revenue from third party in-app ads, advertises to users on the app, and advertised him to his abusers. ER-170, 190. Doe also pleaded that under (a)(2) that Grindr financially benefitted from assisting, supporting, and facilitating a venture that it knew has engaged in sex trafficking when it matched Doe with adults for the purpose of in-person sexual encounters and the exchange of sexually explicit photos and profited from Doe's use of the Grindr App. ER-190.

9

**(3)** **Grindr's Motion to Dismiss**

Grindr removed the case to the Central District of California where it was assigned to the Honorable Otis D. Wright III. On April 28, 2023, Grindr filed a motion to dismiss all six of Doe's claims. Relying on Second Circuit precedent, Grindr argued that *all* of Plaintiff's claims are barred because Section 230:

> [P]rovides broad immunity to online services for claims stemming from the publication of content created by third parties. The Second Circuit applied Section 230 to reject claims against Grindr in *Herrick v. Grindr, LLC,* 306 F. Supp. 3d 579, 592 & 592 n.8 (S.D.N.Y. 2018), *aff'd* 765 F. App'x. 586, 590-91 (2d Cir. 2019), as did a federal district court in *Saponaro v. Grindr LLC,* 93 F. Supp. 3d 319, 323 (D.N.J. 2015).

ER-144. Grindr further argued Doe failed to state a claim under the TVPRA and that it is protected by the First Amendment.

Doe opposed the motion, explaining that Doe's claims do not treat Grindr as a publisher or speaker of third-party content and the duty breached does not relate to a publishing function. *Lemmon v. Snap, Inc.* 995 F.3d 1085 (9th Cir. 2021), *HomeAway.com, Inc. v. City of Santa Monica,* 918 F. 3d 676 (9th Cir 2019), *Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016). Doe supported its TVPRA claims relying on the factually similar *A.M. v. Omegle.com LLC,* No. 3:21-cv-01674-MO, 2023 WL 1470269 (D. Or. Feb. 2, 2023) which carefully applies and distinguishes *Does 1-6 v. Reddit, Inc.,* No. SACV 21-00768 JVS (KES) 2021 WL 5860904, at *7–8 (C.D. Cal. Oct. 7, 2021), concluding that a platform's ad revenue establishes a "commercial sex act" for beneficiary liability under 18 U.S.C. § 1591(a)(2) and that

where a platform is aware its children engage in sexual conduct via its platform and that "multiple news articles detail[ed] stories of minors being exploited or abused through the [platform]" prior to the plaintiff's harm, it is sufficient to show the platform knew or recklessly disregarded that children used its platform, establishing direct liability under 18 U.S.C. 1591(a)(1).

### (4)    The District Court Decision

On December 28, 2023, Judge Owens issued an Order Granting Motion to Dismiss without oral argument and with prejudice ("the Order"). The Order says "The Court finds Doe's claims are barred by Section 230 of the CDA ("Section 230") and therefore does not reach Grindr's other arguments." ER-7 (Order at 4). The Court adopted Grindr's contention that " 'the genesis of [Doe's] injuries is user-generated content.'" ER-11 (Order at 8). Doe's claims were characterized as "artful pleading[s]" because "[i]f Grindr had not published that user-provided content, Doe and the adult men would never have met and the sexual assaults never occurred." ER-9 (Order at 6). The Court applied the but-for test to the product liability claims and then concluded that because the negligence and defective warnings claims "also rely on published content from App users," the same but-for analysis applies pursuant to the Second Circuit's *Herrick v. Grindr.* The TVPRA direct perpetrator claim was dismissed on account of Doe lying about his age to use the app. And the beneficiary liability claim was dismissed because "just as in *Reddit,* [t]aken as true,

[Doe's] allegations suggest only that [Grindr] 'turned a blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking." ER-16 (Order at 13). The court declined to weigh in on Grindr's First Amendment argument.

## E. SUMMARY OF ARGUMENT

In all cases, the Central District of California must apply Ninth Circuit precedent unless doing so is "irreconcilable" with higher authority. *See e.g. Duhaime v. Ducharme,* 193 F.3d 1126 (9th Cir. 1999). ("[I]n the absence of Supreme Court law, [the district court] is bound to follow Ninth Circuit precedent.") The Supreme Court has not directly ruled on Section 230 in any substantive fashion.[1]

The heart of this appeal is whether Doe's claims treat Grindr as a publisher or speaker of information provided by another information content provider. If so, Grindr is entitled to Section 230 immunity.

The Ninth Circuit applies a three-factor analysis that immunizes defendants pursuant to Section 230(c)(1) for claims brought against (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law

---

[1] See e.g. *Doe v. Facebook, Inc.* 142 S. Ct. 1087 (2022); *Malwarebytes, Inc. v. Enigma Software Grp. U.S.,* 141 S. Ct. 13 (2020) where in both, the Supreme Court denied cert. See also, *Gonzalez v. Google LLC,* 143 S. Ct. 1191 (2023) where the court ultimately declined to rule on the issue because the complaint failed to state a plausible claim ("We therefore decline to address the application of § 230 to a complaint that appears to state little, if any, plausible claim for relief.") and, companion case, *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023).

cause of action, as a publisher or speaker (3) of information provided by another information content provider. *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir. 2009).

In the district court, the parties applied different tests to determine the answer to Prong 2. Grindr argues that but for third party content, none of Doe's injuries would have transpired and therefore Grindr is entitled to immunity. *Herrick v. Grindr LLC,* 765 F. App'x 586, 590 (2d Cir. 2019). Doe argues the duty Grindr breached does not involve publishing functions and therefore Grindr is not entitled to immunity. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019).

The district court erroneously sided with Grindr by applying the Second Circuit but-for test. In case after case, the Ninth Circuit has vehemently rejected the but-for test. Had the district court properly applied the Ninth Circuit duty-breached test, it would have reached the opposite result and Doe's claims would have survived.

Further, the district court improperly relied on *Dyroff* to reach its conclusion that Doe treated Grindr as a publisher/speaker. But *Dyroff's* contribution to Section 230 jurisprudence is related not to Prong 2, but to the Prong 3 (whether content is first- or third-party). Instead, the Court should have found that, like in *Lemmon* and *Omegle,* Doe's claims – including his product liability claims – do not treat Grindr

13

as a publisher/speaker. The Court further erred in in two other ways – first, by **requiring** that a plaintiff allege that the platform's own content is the source of a plaintiff's injury; and second, in characterizing geolocation information that's automatically extracted from a user's phone as third-party content.

Lastly, the district court erred in dismissing Doe's direct and beneficiary claims under the TVPRA in light of Grindr's comprehensive and varied knowledge that children flocked to its application in large numbers, get victimized, and sexual conduct is pivotal to the product's purpose and monetization. *See Does 1-6 v. Reddit, A.M. v. Omegle*

## F.   ARGUMENT

### (1)   <u>Standard of Review</u>

This Court reviews the district court's decision *de novo*. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). In considering a Rule 12(b)(6) motion that contends a complaint fails to state a claim, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party, here, Doe. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). To overcome a motion to dismiss, a plaintiff need only allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Here, Doe pleaded plausible facts supporting each of his

claims under against Grindr. *Id*. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### (2) The District Court's Decision Runs Afoul of the Text, Precedent, and Purpose of the Communications Decency Act.

Section 230(c)(1) states that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

As dozens of courts, academics, and law review articles have tiresomely explained, Section 230 was designed, in 1996, to protect then-fledgling internet companies from incurring liability when millions of users posted content and the companies felt obliged – or didn't – to patrol the content. *See, e.g., Neville v. Snap, Inc.,* Case No. 22STCV33500 (Cal. Superior Ct. Jan. 2, 2024). Over the years, much of the judicial analysis has focused on an issue Doe contends is not relevant to this case, namely, the potential liability of a platform for its decision to remove or not remove specific third-party content somebody has posted onto its site.[2]

Congress expressed its intention with respect to the preemptive effect of Section 230 on state law with a traditional "consistent/inconsistent" construct:

> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of

---

[2] Kosseff, Jeff, *A User's Guide to Section 230, and a Legislator's Guide to Amending it (or Not)* (August 14, 2021). Berkeley Technology Law Journal, Vol. 37, No. 2, 2022.

action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

47 U.S.C. § 230(e)(3). This construct kicks to courts the decision whether a state's

law including its common law is or is not consistent with Section 230.

Congress also expressed its five policy goals in enacting section 230 in

subdivision (b):

> It is the policy of the United States—
> (1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
> (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;
> **(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;**
> (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and
> (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

47 U.S.C. §230(b). Emphasis added.

Recently, courts in the Ninth Circuit have been particularly cognizant of the

CDA's third policy goal of protecting children. ("Child safety and well-being also

constitute explicit goals of the CDA." *In re Soc. Media Adolescent Addiction/Pers.*

*Inj. Prod. Liab. Litig.*, No. 4:22-MD-03047-YGR, 2023 WL 7524912, at *7 (N.D.

Cal. Nov. 14, 2023), *motion to certify appeal denied,* No. 4:22-MD-03047-YGR,

2024 WL 1205486 (N.D. Cal. Feb. 2, 2024); *See also Neville et al. v. Snap Inc.*, No.

16

22STCV33500, n. 4 (Cal. Superior Ct. Jan. 2, 2024) (recognizing that "technologies that empower parents to restrict their child's access" and that "maximize user control over what information is received by individuals, families, and schools who use the internet may be illusory if any 'state or federal regulation' is off the table.")

      (a)      ***Section 230 Immunity in the Ninth Circuit Applies Only when the Plaintiff Seeks to Treat the Platform as a Publisher or Speaker.***

The Ninth Circuit has construed 230(c)(1) to create immunity to (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp. Inc.,* 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes v. Yahoo!, Inc.* 570 F.3d 1096, 1099 (9th Cir. 2009).

This immunity is far from limitless. Although Section 230 does not define "publisher," the Ninth Circuit has defined "publication" in the context of Section 230 to "involve[] reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *HomeAway.com, Inc. v. City of Santa Monica,* 918 F.3d 676 (9th Cir. 2019) (citing *Fair Hous. Council v. Roommmates.com, LLC*, 521 F.3d 1157, 1170-71, *en banc* (9th Cir. 2008). With respect to the term "publishing" itself, courts understand it to mean "deciding whether to publish or

17

withdraw from publication third-party content." *Lemmon,* 995 F.3d 1092 (9th Cir. 2021) (quoting *Internet Brands*, 824 F.3d 851)).

The Ninth Circuit has been the most prolific in refining the issue of whether a claim treats a platform as a publisher/speaker. In a 2009 Ninth Circuit case, *Barnes v. Yahoo!,* the plaintiff's ex-boyfriend posted explicit images advertising her on a website and inciting strangers to come visit her at home and work for sex. *Barnes v. Yahoo! Inc.,* 570 F.3d. 1096, 1098 (9th Cir. 2009). Yahoo promised to remove the content, but then didn't. So, the victim sued for negligent undertaking and promissory estoppel. The Ninth Circuit reversed dismissal on the promissory estoppel claim because the plaintiff "d[id] not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, a promissor who had breached." *Id.* at 1107. In 2016, the Ninth Circuit similarly reversed a dismissal on a failure to warn claim against a modeling website that had knowledge that two maniacs were using its site to find women to drug and rape. The Ninth Circuit reasoned that instead of suing about content, "Jane Doe attempts to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims. . . the duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content." *Doe v. Internet Brands,* 824 F.3d 846, 848 (9th Cir. 2016).

18

In determining whether the defendant is being treated as a publisher, there are two alternative tests in this country: the duty test and the but-for test. The Ninth Circuit has elected to use the duty test and rejected the but-for test. The duty test requires courts look "to what the duty at issue actually requires: specifically, whether the duty would necessarily require an internet company to monitor third-party content." *See HomeAway.com,* 918 F.3d at 676.

The but-for test originated in the Second Circuit in a case that Grindr and the district court incorrectly rely upon. *Herrick v. Grindr LLC,* 765 F. App'x 586, 590, 591 (2d Cir. 2019) (summary order). There, Grindr was also the defendant. In *Herrick v. Grindr*, the plaintiff's ex-boyfriend impersonated him on Grindr and sent over a thousand men to his home to rape him. Grindr represented to the plaintiff that it lacked the technology to remove a predatory user. The plaintiff sued Grindr for releasing a dangerous and defective product into the stream of commerce because it was foreseeable that a hook-up app would sometimes be weaponized to stalk and injure. Affirming the lower court's decision, the Second Circuit concluded that speech – contained in the ex's malicious profiles and the direct messages setting up the sex dates – was the root cause of the plaintiff's injuries and reasoned that therefore the claims treated Grindr as a publisher. ("Herrick's product liability claims arise from the impersonating content that Herrick's ex-boyfriend incorporated into profiles he created and direct messages with other users. . . his ex-

19

boyfriend's online speech is precisely the basis of his claims that Grindr is defective and dangerous."). *Id*. at 590, 591. The holding, and the but-for test it created, has been widely criticized as an atextual expansion of Section 230. ("One court granted immunity on a design-defect claim concerning a dating application that allegedly lacked basic safety features to prevent harassment and impersonation. *Herrick v. Grindr LLC* . . . Paring back the sweeping immunity courts have read into 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S. Ct. 9 (2020) (statement of Justice Thomas respecting denial of certiorari)).

**(b)** ***The Ninth Circuit Vehemently Rejects a But-For Test in Determining whether a Platform is Being Treated as a Publisher/Speaker.***

The Ninth Circuit expressly rejects a "but-for" test. "It is not enough that third-party content is involved; Internet Brands rejected use of a 'but-for' test that would provide immunity under the CDA solely because a cause of action would not otherwise have accrued but for the third-party content." *HomeAway.com,* 918 F.3d at 682; No. 4:22-md-03047-YGR (N.D. Cal. Nov. 14, 2023 at 11)[3] ("Critically,

---

[3] See also *Ziencik v. Snap, Inc.,* No. CV 21-7292-DMG (PDx), 2023 WL 2638314 (C.D. Cal. 15 Feb. 3, 2023) ("Snap cites no case law for the idea that Section 230 bars any claim for harm that simply 'flows from' a third party's conduct. Indeed, the Ninth Circuit has repeatedly allowed claims where the injury apparently flowed from

Section 230 does not create immunity simply because publication of third-party content is relevant to or a but-for cause of the plaintiff's harm.").

Courts applying Ninth Circuit precedent have determined that a "but-for" test clashes with the policy statements in subdivision (b) of Section 230. ("Moreover, it seems clear that a 'but for'/ 'based on' / 'flows from' test is not consistent with a plain meaning analysis of the words Congress chose to employ. If Congress had intended to immunize all interactive computer services from liabilities 'based on' third-party content, there are straightforward elocutions to express that intention. But that is neither what Congress did nor what Congress could have done consistent with the policy statements in subdivision (b) of Section 230. Instead, Congress chose to invoke words of art drawn from common law defamation-liability distinctions between 'publishers' and 'speakers,' on the one hand, and, apparently, 'distributors' on the other." *Neville v. Snap, Inc.,* Case No. 22STCV33500 at 13 (Cal. Superior Ct. Jan. 2, 2024)).

### (c) The District Court Erred in Applying the Second Circuit's But-For Test.

The district court erroneously applied the broadest possible construction – concluding that Grindr is immune from liability for any claim where the third party content is the but-for cause of the harm:

---

third party conduct, so long as the claim did not seek to hold the internet service provider liable as a publisher.").

If Grindr had not published the user-provided content, Doe and the adult men would never have met and the sexual assaults never occurred. . . Thus, Doe's claims require the Court to treat Grindr as a publisher of user content. ER-9 (Order at 6).

The harm Doe alleges does not flow solely from the product software. Rather, the harm animating Doe's claims is directly related to the geolocation and content provided by users, which facilitates the match, direct messages, in-person meetings, and ultimately here, Doe's assaults. ER-10 (Order at 7).

Doe's negligence and defective warning claims are not materially different from the product liability claims in this regard, as they also rely on published content from App users. Had third parties, including Doe, refrained from sharing geolocation data and communications, the claims that Grindr failed to warn users of the risk of sexual exploitation or negligently misrepresented the App's safety would not be cognizable.[4] ER-11-12 (Order at 8-9).

[The] genesis of [Doe's] injuries is user-generated content that [Doe] should not have been permitted to send or receive." ER-11 (Order at 8).

Courts have found that the "flows from" test is the same thing as a "but-for" test. *See Neville,* No. 22STCV33500 at 12 (Jan. 2, 2024) ("Snap's 'based on'/ 'flows from' test is a 'but for; test; if the plaintiffs would have no claim but for the presence of the drug sellers' third-party content on Snap's platform, then Section 230 immunizes Snap.").

Had the district court applied the proper test, it would have found that the duty breached by Grindr does not necessitate the monitoring of third-party content.

---

[4] This separate application of the Prong 3 but-for test to the negligence and defective warning claims is confusedly under the header "Third-Party Content."

### (i) *Doe does not Seek to Treat Grindr as a Publisher or Speaker.*

If it's ambiguous whether a plaintiff seeks to treat the platform as a publisher or speaker, courts are to look at "what the duty at issue actually requires:" i.e., "whether the duty would necessarily require an internet company to monitor third-party content." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682, (9th Cir. 2019).

As in *Internet Brands* and *HomeAway*, Grindr's underlying duty "could have been satisfied without changes to content posted by the website's users." Doe's theories of liability are wholly independent of content. He does not seek to hold Grindr liable for failing to remove content. He's not suing it for communications between he and the men who abused him. Nor is he seeking to hold Grindr liable for the deeds of the men who raped him or Grindr's decision to allow them access to the product. No content moderation decision by Grindr could have prevented the harm he suffered. That is, Grindr's aggressive marketing at children funneled Doe, a vulnerable child, into its userbase and then matched him with adults who raped him.

The district court's insistence that Doe's claims hinge on content moderation surrounding "a user's profile and geolocation data" and "unlawful content posted on its platform" is entirely divorced from the pleadings. ER-9, 16 (Order at 6, 13).

23

### (ii) *The District Court Incorrectly Relied on* Dyroff *for the Prong 2 Section 230 Analysis.*

The district court was improperly deferential to the Ninth Circuit's decision in *Dyroff v. Ultimate Software Group, Inc.* (9th Cir. 2019) 934 F.3d 1093 for its *Barnes* Prong 2 analysis. There, the defendant, Ultimate Software, operated a primitive text-based website where users anonymously posted first person experiences and could post and answer questions and label their emotional responses. Users could join groups and the site automatically recommended groups for users to join based on the content of their posts. When a user posted content to a group, other members of that group would receive an email notification about the posting. The plaintiff's son, who was struggling to stay sober posted onto the forum "where can I score heroin in Jacksonville, fl." A drug dealer with the name "potheadjuice" responded on the site and the site automatically sent the plaintiff's son an email with potheadjuice's post. The plaintiff's son bought the drugs and tragically died the next day from heroin laced with fentanyl. The plaintiff sued ultimately for negligence, wrongful death, premises liability, failure to warn, civil conspiracy and collusion, unjust enrichment, and pursuant to the drug sale liability law. The Ninth Circuit ruled that all three prongs were met for immunity and dismissed all claims reasoning that: "The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet

24

subscribers post comments and respond to comments posted by others." *Id.* (*quoting Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1266 (9th Cir. 2016).

*Dyroff* is different than this case because it does not involve product liability claims and the plaintiff conceded in the complaint that they were treating Ultimate Software as a publisher or speaker. *Dyroff v. Ultimate Software Grp., Inc.,* 3:17-cv-05359-LB-1-1. In the Complaint, the plaintiff pleaded that defendants "acted" "in an editorial capacity" in "all claims contained within this Complaint." *Id.* ¶¶ 74, 115. Thus, at the outset, the *Dyroff* panel paid little heed to Prong 2. The issues presented to the Ninth Circuit were about Prong 3—whether Ultimate Software created or developed third party content and whether the platform was a misfeasant or nonfeasant actor. The plaintiff sought to hold Ultimate Software liable as a publisher or speaker but for its own content, claiming that the automated emails it sent to her son and the site's hand in materially creating or developing the content – via its internal operations – amounted to first party content. The Ninth Circuit found that neither the communications received by the decedent or the website's own features transformed the third-party content into Ultimate Software's own content. Thus, this Court found Ultimate Software was immune from liability—at least, seemingly, for *some* claims.

Seemingly for *some* claims, because despite the *Dyroff* plaintiff not litigating Prong 2, the court nevertheless did a subsequent analysis of two of the claims—

collusion and failure to warn even after determining that Section 230 granted immunity. Thus, the Ninth Circuit implied that these claims at least did not treat Ultimate Software as a publisher/speaker. Thus, the district court was wrong to rely on *Dyroff* for its Prong 2 analysis. *See* ER-11 (Order at 8) ("Furthermore, the Ninth Circuit considers a defendant website's functions, operations, and algorithms – like Grindr's match feature here – to be editorial choices, made to facilitate the communication of others. *See Dyroff*, 934 F.3d at 1098 (holding that features, functions, and algorithms which analyzed user content and recommended connection 'are tools meant to facilitate the communication and content of others')").

The district court expands *Dyroff* beyond recognition by using the *Dyroff* court's Prong 3 analysis dicta to back into its own Prong 2 conclusion that all "functions, operations, and algorithms" trigger Section 230 immunity. Yet, the district court does not seem to realize or care that <u>all</u> interactive service providers have features, functions, and algorithms. Presumably any injury involving a platform would somehow relate to one of those things. The district court interprets *Dyroff* to mean that a platform merely having features and functions and algorithms means the plaintiff seeks to treat the defendant as a publisher/speaker. This is, to date, the most bloated interpretation of Section 230 case law. It judicially alters Section 230 to

immunize platforms not just for third party information content, but for all features, functions, and tools that "facilitate the communication and content of others."

The district court's analysis of *Dyroff* does not just wrongly adopt the but-for test **not** contained in *Dyroff* but goes further to extend this Second Circuit test beyond harms emanating from third party content. This but-for-plus test would result in the dismissal of any claim involving harms caused by features, functions, algorithms, and tools that facilitate communication and content of others. If true, an absurd result.

### (iii) *The District Court Erred in Ignoring* Lemmon *for its Prong 2 Analysis.*

The Ninth Circuit's decision in *Lemmon v. Snap* is directly on point in the instant case and rejects immunity in this case. 995 F.3d 1092. *Lemmon* involved three boys who died in a horrific car accident at speeds of 113-123 mph, having just opened the Snapchat application to use a feature would document and publish their speed. *Id.* at 1088.

*Lemmon* holds that the products liability action did not treat Snap as a publisher or speaker of third-party content subject to Section 230's protections, but instead properly treated it as a manufacturer of a defectively designed product. *Id.* at 1092. Applying its duty test, The Ninth Circuit was emphatic that the duty underlying a products liability claim "differs markedly from the duties of publishers as defined in the CDA. Manufacturers have a specific duty to refrain from designing

27

a product that poses an unreasonable risk of injury or harm to consumers. Meanwhile, entities acting solely as publishers . . . generally have no similar duty." *Id.* (internal citations omitted).

*Lemmon* instructs further that a claim springs from a defendant's role as a manufacturer, not a publisher, where the defendant could have taken "reasonable measures to design a product more useful that it was foreseeably dangerous – without altering that content that [its] users generate. . . .Snap's alleged duty in this case thus 'has nothing to do with' its editing, monitoring, or removing of the content that its users generate through Snapchat." *Id.* (citing *Doe v. Internet Brands,* 824 F.3d 846, 851 (9th Cir. 2016)).[5] Furthermore, the Ninth Circuit has rejected the contention that simply because a defendant platform has publication functions that a product liability claim is voided. *Lemmon,* 995 F.3d at 1092 (explaining that where a platform "allows its users to transmit user to transmit user-generated content to one another [it] does not detract from the fact that [Plaintiffs] seek to hold Snap liable for its role in violating its distinct duty to design a reasonably safe product.")

Like in *Lemmon*, Doe's product claims are based upon Grindr designing and manufacturing a product that posed an unreasonable risk of injury to consumers.

---

[5] *See also Barnes,* 570 F.3d at 1107 (defendant liable where liability derived from promise to remove third-party content from website, not merely from failure to remove the content) ("liability here would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication).

Doe's negligence claims are based on Grindr breaching its duty of care in not marketing and distributing a product to children that foreseeably will cause them to be raped. It's hard to imagine a publisher, in its capacity of exercising editorial functions, having a similar duty or causing the type of harm – a series of in-person rapes of a child – that befell Doe.

Here, Doe's claim treats Grindr as a manufacturer, not a publisher, because Grindr could have fulfilled its duty to not design an unreasonably dangerous product by repairing its broken system that accommodates child users, lacks functioning controls to age-gate, and matches them with adults. *Cf. Bride v. Snap, Inc.,* No. 2:21-cv-06680-FWS-MRW, 2023 WL 2016927, at \*5 (C.D. Cal. Jan. 10, 2023) (where unlike *Lemmon* and Doe, the plaintiffs' claims were grounded in a duty that would "necessarily require [defendants] to monitor third-party content" to stop abusive messaging).

Doe's product liability and negligence claims do not treat Grindr as a publisher or speaker of third-party content. Doe's claims are not concerned with speech or information content. He is suing Grindr for releasing a product into the stream of commerce that is advertised to children and induces in-person sexual encounters between children and adults. Doe's theory of liability has nothing to do with information content, *i.e.,* pictures, images, or words published on Grindr. Thus, Grindr is not treated as a publisher. No content decision – not even removing the

29

men who raped him or their profiles – would have prevented his abuse because he would have been matched with somebody else.

Other trial courts have shown great deference to *Lemmon* resulting in denials of immunity for: a web-based platform that facilitates the live-streaming of adults and children, social media products that addict child users, and a direct messaging app where children were accessed by drug dealers and sold lethal drugs.

In *Omegle*, the District of Oregon considered claims analogous to those alleged in this matter to deny defendant Omegle's motion to dismiss on Section 230 grounds. 614 F.Supp.3d at 821. Omegle is a web-based product that randomly pairs strangers for one-on-one chats. *Id.* at 817. When plaintiff A.M. was eleven years old,[6] Omegle "matched" her with an adult man who forced her to make pornography of herself and recruit other minors for him to abuse. *Id.* The *Omegle* court applied *Lemmon* to hold that A.M.'s products liability and failure to warn claims did not treat Omegle as the publisher or speaker of third-party content, and thus Section 230 did not apply.

---

[6] It was inconsequential in the *Omegle* decision that A.M. used the 13+ product when she was 11 years old. Grindr's repeated statements that Doe "lied" about his age are similarly irrelevant, not only because comparative fault is a question reserved for the jury, but also because of Doe's allegations that 1) Grindr actively advertises to minors and 2) Grindr knows children uses its product but refuses to mitigate the risk of harm to them. ER-171-72, 184-86.

30

This Court should find that Doe does not treat Grindr as a publisher or speaker of third-party content for the same reason that *Omegle* found the same: Grindr, like Omegle, could have cured its product defects by not making its product available to children "by designing a product so that it did not match minors and adults." *Id.* at 819. Like in *Omegle*, Doe "is not claiming that [Grindr] needed to review, edit, or withdraw any third-party content to meet this obligation…. [And] the content sent between [Doe] and [the men who raped him] does not negate this finding or require that [the Court] find [Grindr] act as a publisher." *Id.*

Moreover, the *Omegle* court found A.M.'s claims did not rest on third-party content: "Plaintiff's contention is that the product is designed in a way that connects individuals who should not be connected (minor children and adult men) and that it does so before any content is exchanged between them." *Id.* at 820-21. Similarly, here, Doe alleges that the Grindr App product is defective because it pairs adults with children, which occurs independently of the creation of any third-party content. ER-171.

In *Ziencik v. Snap*, Inc., plaintiffs alleged the platform breached its duty by failing to report harassers to law enforcement., No. 21-7292, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023). This was not barred by Section 230, though the claim was dismissed for other reasons.

31

In *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation,* the Central District also deferred to *Lemmon*. 4:22-md-03047-YGR. The multi-district litigation was filed on behalf of hundreds of children, school districts, and over thirty Attorneys General across the United States against four companies offering the world's most used social media platforms: Meta's Facebook and Instagram, Google's YouTube, ByteDance's TikTok, and Snap's Snapchat. *Id.* In that case, plaintiffs pleaded that defendants target children as a core market and because children still developing impulse control are uniquely susceptible to harms arising out of compulsive use of social media platforms, defendants have created a youth mental health crisis through the defective design of their platforms which caused kids to get addicted to the content and experience depression, child sexual exploitation, eating disorders, and suicide. *Id.*

For the defect allegations, the court took a defect-specific approach and determined the following are not barred by Section 230 because they do not treat the defendant platform as a publisher/speaker:

> (i) failure to implement robust age verification processes to determine users' ages;
> (ii) failure to implement effective parental controls;
> (iii) failure to implement effective parental notifications;
> (iv) failure to implement opt-in restrictions to the length and frequency of use sessions;
> (v) failure to enable default protective limits to the length and frequency of use sessions;

(vi) creating barriers that make it more difficult for users to delete and/or deactivate their accounts than to create them in the first instance;
(vii) failure to label content that has been edited, such as by applying a filter;
(viii) making filters available to users so they can, among other things, manipulate their appearance; and
(ix) failure to create adequate processes for users to report suspected CSAM to defendants' platforms.

*Social Media Addiction* at 25.

Many of the above defects that the Central District recognized as not implicating publishing are at play for Doe as well, particularly those relating to age verification. In contrast, California courts have justifiably found when the duty breached relates specifically to content-based decisions, the claim is barred by Section 230.[7] The *Lemmon, Omegle,* and *Social Media Addiction* courts denied

---

[7] *See e.g. Fields v. Twitter, Inc.,* 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016) (noting courts have held such content-based decisions include "the option to anonymize email addresses, [and the] acceptance of anonymous payments"); see also *Bride v. Snap, Inc.* No. 221CV06680FWSMRW, 2023 U.S. Dist. LEXIS 5481, 2023 WL 2016927, at *5 (C.D. Cal. Jan. 10 2023) (where the court determined that all causes of action were predicated on the platform "failing to adequately regulate end-users' abusive messaging" where Plaintiffs sought to "characterize anonymity as a feature or design independent of the content posted on Defendants' applications.") *Sikhs for Just. Inc. v. Facebook, Inc.,* 697 F. App'x. 526 (9th Cir. 2017) (discrimination claim targeting Facebook's blocking the group's Facebook page from users in India); *Lancaster v. Alphabet Inc.,* 2016 U.S. Dist. LEXIS 88908, 2016 WL 3648608 (N.D. Cal. July 8, 2016) where plaintiff sued YouTube for removed her videos for copyright infringement. *L.W. v. Snap Inc.* 2023 WL 3830365 (S.D. Cal. June 5, 2023) where guardians for three children sued Snap, Apple, and Google for facilitating the transmission of child sexual abuse material and pornography. *Ginsberg v. Google Inc.,* 586 F. Supp. 3d 998, 1004-05 (N.D. Cal 2022) where the plaintiff tried to sue for Google's Play Store nonremoval of an application.

Section 230 immunity for products liability and akin to those alleged here, and this Court should reach the same conclusion.

### (d) The Court Erred in Granting Immunity because Third Party Content is Not a Basis of Doe's Claims.

When content is not the basis of claims, Plaintiffs are not required to make a showing that content came from a third-party content provider.

The district court dings Plaintiff for not convincing it that Grindr is "responsible in part, for the creation or the development of the offending content on the internet" (citing *L.W. v. Snap Inc.,* --- F. Supp. 3d ---, No. 22-cv-619-LAB-MDD, 2023 WL 3830365, at *5 (S.D. Cal. June 5, 2023) (quoting *Lemmon*, 995 F.3d at 1093).

A proper 230 analysis looks not at whether a plaintiff alleges first party content caused the harm, but whether the claims "relied on 'information provided by another information content provider.'" *Lemmon*, 995 F.3d 1085. Yet, the district court in its Prong 3 analysis imposes a new pleading requirement whereby litigants suing platforms must claim their harm was caused by the platform's own content. This defies logic in cases, as here, where content is not even at issue.

Throughout the Order, the district court regards geolocation data as the heart of the content that Doe has purportedly published. Even if geolocation data were the basis of this suit, this is not information content provided by a third party. The app itself extracts location data from users' phones and then uses that data to match users

34

based on proximity. This process happens within the coding guts of the product. Users do not themselves upload their geographic location as the district court seems to think. Certainly, the publication of content by a third party requires the conduct of knowingly publishing something to somewhere. Whether or not the court regards the geolocation data as Grindr's own content, it most certainly is not content published by Doe or other users. Grindr was far more active in "creating or developing" the geolocation information and converting it into a core product feature. All Doe did was exist in space.

### (3)    The District Court Erred in Dismissing Doe's TVPRA Claims.

Claims under 18 U.S.C. § 1595 for violation of 18 U.S.C. § 1591(a)(1) or § 1591(a)(2) are exempt from Section 230 immunity. 47 U.S.C. § 230(e)(5)(A). In 2018, Congress passed the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") which amended Section 230 to clarify that "[n]othing in [Section 230]. . . shall be construed to impair or limit. . . any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. §230(e)(5)(A). Section 1595 of The Trafficking Victims Prevention and Protection Reauthorization Act of 2022 (TVPRA),[8] in turn, provides a civil cause of action for violations of federal

---

[8] Formerly the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA").

35

trafficking laws, while Section 1591 of the TVPRA creates a direct liability claim for "[w]hoever knowingly (1) recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," or "(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." 18 U.S. C. § 1591 (a).

As described above, section 1591(a)(2) requires a separate violation of (a)(1), from which the defendant violating (a)(2) knowingly benefits. The statute goes on to read that under (a)(1) and (a)(2) the defendant must "know[] except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact. . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act."

### (a) *Doe States a Direct Perpetrator Claim under 18 U.S.C. § 1591(a)(1).*

To state a claim under subsection (a)(1), Doe must allege two elements. *Omegle*, 2023 WL 1470269, at * 3 (D. Or. Feb. 2, 2023). First, Grindr "must have 'knowingly' recruited, enticed, obtained, or solicited 'by any means' a person." *Id.* (quoting 18 U.S.C. § 1591(a)(1)). Here, Doe alleged that Grindr knowingly recruited users, including himself, to use its product for "a safe space where you can discover, navigate, and get zero feet away from the queer world around you," and that "Grindr markets the Grindr App towards children" on social media platforms including Instagram and TikTok. ER-171-73, 190. Doe also alleged that Grindr's revenue

36

model is based on increasing traffic to its platform, *id.* ¶¶ 24, 146, "so the more users it can 'recruit,' 'entice,'' or 'solicit,' the better." *Omegle*, 2023 WL 1470269, at *3.

The second element of a claim under subsection (a)(1) requires that a defendant recruit people knowing, or in reckless disregard of, two facts: "that the person recruited is under 18 years old… [and] that the person 'will be caused to engage in a commercial sex act.'" *Id.* (quoting 18 U.S.C. § 1591(a)(1)). Doe alleged that children frequently use the Grindr App, Grindr is aware of this fact, Grindr markets the Grindr App to children, and Grindr's age verification features are ineffective to prevent children from using the Grindr App. *See, e.g.,* ER-167-86, 170-74, 175, 179. These allegations are sufficient to show that Grindr recruited children to the Grindr App knowing, or in reckless disregard of, their status as minors.

Doe also sufficiently alleged that Grindr, a dating application, knew, or was in reckless disregard of, the fact that children using the Grindr App would be caused to engage in sex acts. *Id.* at 167 ("For more than a decade Grindr…has known its core product facilitates the sexual predation of children"); i*d.* at 171 ("The Grindr App functions by 'matching' geographically proximate users with one another… When Grindr matches two users, Grindr provides both users with information about how proximate they are to one another"); *id.* at 174 ("[S]ince 2015 over 100 adult men have faced criminal charges in the United States related to child sexual exploitation using Grindr"); *id.* 179-80, 191-93 (alleging numerous publicized

accounts of child users of the Grindr App being caused to engage in sex acts predating Doe's use of the product); *id.* at 190 ("Grindr knows that children use the application and Grindr matches those children with adults, knowing that it is facilitating in-person sexual experiences between the children and adults."); *id.* 191 ("Grindr knew that Predators frequented the Grindr App for the purposes of meeting children and engaging in child sexual exploitation."); *id.* at 192 (a study published in the June 2018 issue of Journal of Adolescent Health revealed that as many as 50% of all sexually active boys who identify as gay use the Grindr App to meet partners for sex"). Doe alleges he was a child who Grindr recruited to use the Grindr App and that his use of the product caused him to engage in sex acts, so he has also pleaded these mens rea elements of 18 U.S.C. §1591(a)(1) with specificity as to himself. *Id.* at 175-77, 193-94.

Such a conclusion is supported by *Omegle*, which found similar allegations – that Omegle was aware its users engage in sexual conduct on their platform, and that "multiple news articles detail[ed] stories of minor being exploited or abused through Omegle" prior to the events involving the plaintiff occurred – sufficient to plead that Omegle knew or recklessly disregarded that children using its platform, including the plaintiff, would be caused to engage in sex acts. 2023 WL 1470269, at *3.

Finally, Doe sufficiently pleaded that Grindr knew or recklessly disregarded that his sex acts would be commercial. A commercial sex act is "any sex act, on

38

account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). "Every court to have considered this definition in depth has found that it should be read broadly." *Omegle*, 2023 WL 1470269, at *4. It is not necessary that predators paid Grindr to abuse children. *Id.* Doe need only allege that Grindr "knew or recklessly disregarded the fact that it was receiving compensation from advertisers on account of the sex acts taking place on its website, some of which involved minors." *Id.*

Here, Doe pleaded that Grindr received compensation from advertisers and members because of the sexual activity that stems from use of the product, ER-167, 170, 190, 194. Crucially, Doe alleged that Grindr receives this compensation while simultaneously marketing to children, prompting children to misrepresent their ages when using the Grindr App, failing to use available safety measures – like age verification or geo-fencing to prevent use of its product at schools – to avoid matching children with geographically proximate adult strangers, and prompting users to advertise themselves for sex acts by describing their physical attributes and sexual preferences on their Grindr App profiles. *FAC* ¶¶ 7-8, 13, 27-33, 35-41, 75-78, 107(a)-(c). *Cf. Omegle*, 2023 WL 1470269, at *4 (allegations that Omegle received advertising revenue while lacking age verification and matching minors with adults through use of its product supported finding that it knew or should have known the sex acts were commercial).

39

The court should further find that Grindr knew, or recklessly disregarded, that the rapes of Doe would be commercial because Grindr "could make changes that would minimize predators' access to children," for example, through available age verification technology, preventing use of its product at schools, or by monitoring users. *Id.* Accordingly, Doe states a claim under 18 U.S.C. § 1591(a)(1).

### (b) *Doe States a Beneficiary Claim under 18 U.S.C. § 1591(a)(2).*

To state a claim under subsection (a)(2), Doe must allege violation of subsection (a)(1) from which Grindr knowingly "benefits, financially or by receiving anything of value." 18 U.S.C. § 1591(a)(2).

Unlike *Reddit*[9], which affirmed dismissal of a subsection (a)(2) claim for Reddit's failure to prevent circulation of CSAM on its platform, 51 F.4th at 1145-46, Grindr "did more than 'turn a blind eye to the source of [its] revenue'" by participating in the trafficking venture. *Omegle*, 2023 WL 1470269, at *5 (distinguishing *Reddit*, 51 F.4th at 1145, to find plaintiff stated claim under subsection (a)(2)). As described above, Doe alleges that Grindr knew, or recklessly disregarded, that it caused sex acts between minors and adults – including between

---

[9] In *Reddit* the website was sued under the TVPRA for the publication of child sexual exploitation material. The *Reddit* court stressed that for beneficiary liability, the defendant 'must have actually engaged in some aspect of the sex trafficking. *Reddit, Inc.,* 51 F.4th at 1145.

Doe and the four men who raped him – and that Grindr financially benefitted from those sex acts through advertising revenue.

The purpose of the app and its role in facilitating private sexual connections between users are critical factors. *See, e.g., id.* ("Reddit is used to create groups and threads, while Omegle pairs users one-on-one.") Unlike Reddit's web-based platform on which users post content to "small, searchable forums devoted to specific topics," *Reddit*, 51 F.4th at 1139, the Grindr App is primarily an application that matches geographically proximate individuals for the purpose of in-person sexual encounters. *FAC* ¶¶ 3, 8, 13, 30-33, 105-06, 150. Like in *Omegle*, these "differences between the products create a massive gap in their use by predators," because Grindr's unique features "present a much great[er] opportunity for coercion than group" and geographically disparate communications. *Id.* Moreover, Doe's "contentions regarding the lack of safeguards and the ease of use by both minors and sexual predators… further differentiate this case from *Reddit*." *Id.; see* ER-170-71, 185.

### (c) *The District Court Relied on Manifest Errors of Fact to liken Doe's Claims to* Reddit *instead of* Omegle*.*

This case is more like *Omegle* than *Reddit* and *Twitter*. The district court erred in dismissing Doe's direct perpetrator claim on the basis that Doe said on the app he was over eighteen and therefore "cannot now assert that Grindr knew or should have known that Doe was a minor. The plaintiff in Omegle also misrepresented her age

to meet the minimum age requirement. Further, Grindr **requires** that users say they are above eighteen.

By acknowledging that the *Omegle* court ruled differently "based on similar facts," the district court has created inconsistent rulings within the same jurisdiction: "Regarding the sex trafficking claims, the Court reads the statute and the Ninth Circuit's decision in *Reddit* and *Doe v. Twitter* to require something more than the attenuated allegations of TVPRA liability pleaded here." ER-16 (Order at 13 n. 4).

*A.M. v. Omegle,* is the only case that carefully dissects both direct and beneficiary liability. After her TVPRA was initially dismissed for failing to meet the actual knowledge *mens rea* standard, the Omegle plaintiff re-pleaded that Omegle was aware its users engage in sexual conduct on their platform, because "multiple news articles detail[ed] stories of minor being exploited or abused through Omegle" before the events involving the plaintiff occurred – sufficient to plead that Omegle knew or recklessly disregarded that children using its platform, including the plaintiff, would be caused to engage in sex acts. 2022 WL 2713721 (D. Ore. July 13, 2022). By the time the court ruled on the second motion to dismiss, the *Reddit* Ninth Circuit decision had come down and applying it, the District of Oregon determined that beneficiary liability requires "actual knowledge" that they are "knowingly benefitting from participation in [a trafficking venture]," while venture liability requires " 'knowing[]'" or " 'in reckless disregard' of two conditions. First, is that

the person recruited is under 18 years old. Second, is that the person "will be caused to engage in a commercial sex act." *Omegle*, 2023 WL 1470269, at *3. The Court found that the plaintiff had sufficiently alleged that Omegle knew or recklessly disregarded the fact that it was receiving compensation from advertisers on account of the sex acts taking place on its website, some of which involved minor. The Court found Omegle was engaging in a commercial sex act by taking advertising revenue "while at the same time engaging in a series of business practices that it recklessly disregards, or knows, will result in minors being exposed to sexual harm." *Id* at *7-8.

Problematically, the district court mischaracterized Doe's trafficking claims as being content based, focusing on the sending and receiving of child sexual abuse material ("CSAM") to square it better with *Reddit* and *Doe v. Twitter. Doe v. Twitter* is a beneficiary liability case that, like *Reddit* involves a suit based on failure to remove CSAM. No. 22-15103 & 22-15104, 2023 WL 3220912, at *1 (9th Cir. May 3, 3023) (unpublished opinion).

*Doe v. Twitter*, applies *Reddit*, and concludes that the trafficking is too attenuated. Twitter, like Reddit, is not a platform that is in the business of facilitating sexual conduct. But where the main purpose of the platform involves sexual conduct, as with Grindr, profiting off unlawful sex acts justifies factual development.

Yet, the district court incorrectly and with no factual development concluded that the harms caused to children on Grindr are too attenuated from Grindr's revenue generation. Only by imposing the *Reddit* and *Doe v. Twitter* facts onto John Doe could the court find the connection tenuous, concluding '[t]aken as true, [Doe's] allegations suggest only that [Grindr] turned a 'blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking." *Reddit, 51 F.4th at* 1145. But Doe's TVPRA claims don't relate to CSAM or any unlawful content as in *Reddit* and *Twitter*. Instead, the app facilitated in-person penetrative rapes.

## G. CONCLUSION

This Court should reverse the district court's dismissal of Doe's complaint and remand to allow this case to move forward.

DATED this 10th day of May, 2024.

Respectfully submitted,

/s/ Carrie Goldberg
Carrie Goldberg
Naomi Leeds
Roxanne Rimonte
C.A. Goldberg, PLLC
16 Court Street 33rd Floor
Brooklyn, NY 11241
(646) 666-8908

Attorneys for Appellant

44

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** 24-0475

The undersigned attorney or self-represented party states the following:

[X]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *Carrie Goldberg*          **Date** May 10, 2024

45

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 24-0475 _____

I am the attorney or self-represented party.

This brief contains <u>10,592</u> words, including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *Carrie Goldberg* _____  **Date** May 10, 2024 _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<div align="center" style="margin-left:40%">

*/s/ Carrie Goldberg*
CARRIE GOLDBERG
NAOMI LEEDS
ROXANNE RIMONTE
C.A. Goldberg, PLLC
16 Court Street 33rd Floor
Brooklyn, NY 11241
(646) 666-8908

*Attorneys for Appellant*

</div>