No. 24-0475

—————————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

—————————————————————————

JOHN DOE, an individual,

*Plaintiff-Appellant*,

v.

GRINDR INC., a Delaware corporation, and
GRINDR LLC, a California corporation,

*Defendants-Appellees.*

—————————————————————————

On Appeal from the U.S. District Court for the Central District of California
Case No. 2:23-cv-02093-ODW-PD
The Honorable Otis D. Wright II

—————————————————————————

## GRINDR DEFENDANTS-APPELLEES' RESPONSE BRIEF

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
adamsieff@dwt.com

Ambika Kumar
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030
ambikakumar@dwt.com

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Grindr LLC is an indirect wholly owned subsidiary of Grindr Inc. (collectively "Grindr"), which is a publicly traded company with no parent corporation. No publicly held corporation owns 10% or more of Grindr Inc.'s stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................1

JURISDICTIONAL STATEMENT ..........................................4

ISSUES PRESENTED ...........................................................4

STATEMENT OF THE CASE .................................................5

I.     Factual Background ...................................................5

      A.    Grindr Provides an Adult Dating Application ...................5

      B.    Plaintiff Lies About His Age To Post a User Profile to Grindr, Communicates With Other Users, and Is Assaulted ...........7

      C.    Plaintiff Sues Grindr .........................................7

II.    Procedural History ...................................................8

SUMMARY OF ARGUMENT ...............................................8

STANDARD OF REVIEW ...................................................10

ARGUMENT .....................................................................10

I.     The District Court Correctly Held Section 230 Bars Plaintiff's Claims .......10

      A.    The Elements of Section 230 Immunity Are Established ...................13

      B.    Applying Section 230 Supports Congressional Policy .......................27

      C.    FOSTA Does Not Exempt Plaintiff's TVPRA Claims .......................29

           1.    Plaintiff fails to allege any "commercial sex act," barring all claims under 18 U.S.C. § 1591 ...............30

           2.    Plaintiff fails to allege Grindr knowingly perpetrated a specific attempt to traffic him under 18 U.S.C. § 1591(a)(1) ...............32

ii

3. Plaintiff fails to allege Grindr knowingly benefited from participating in a sex-trafficking venture under 18 U.S.C. § 1591(a)(2) .................................................... 33

II. The First Amendment Bars Plaintiff's Claims ................................ 35

III. Plaintiff Fails To Allege Necessary Elements Of His Claims ..................... 39

    A. Grindr's Communication Service Is Not A Product .......................... 39

    B. Plaintiff Fails To Allege An Actionable Duty In Negligence ............. 43

    C. Plaintiff Fails To Allege Negligent Misrepresentation ...................... 45

    D. Plaintiff Fails To Allege Proximate Causation ................................. 46

CONCLUSION ........................................................................................ 48

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.M. v. Omegle.com LLC*,
  2023 WL 1470269 (D. Or. 2023) ........................................................30

*A.M. v. Omegle.com, LLC*,
  614 F. Supp. 3d 814 (D. Or. 2022) ..................................26, 27, 34, 35

*ACLU v. Mukasey*,
  534 F.3d 181 (3d Cir. 2008) ...............................................................38

*Al Shikha v. Lyft, Inc.*,
  --- Cal. Rptr. 3d ---, 2024 WL 2238661 (Cal. Ct. App. May 17, 2024) .............44

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*,
  418 F.3d 600 (6th Cir. 2005) ..............................................................36

*Anderson v. TikTok, Inc.*,
  637 F. Supp. 3d 276 (E.D. Pa. 2022) ..............................................23, 25

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ............................................................................38

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ............................ 11, 13, 14, 17, 18, 19

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ............................................................................38

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ...........................................................10

*Beckman v. Match.com, LLC*,
  668 F. App'x 759 (9th Cir. 2016) ......................................................20

*Beckman v. Match.com, LLC*,
  743 F. App'x 142 (9th Cir. 2018) ......................................................44

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................19

*Borman v. Brown*,
  59 Cal. App. 5th 1048 (2021) ...................................................45, 46

*Bride v. Snap Inc.*,
  2023 WL 2016927 (C.D. Cal. Jan. 10, 2023).........................19, 23, 25

*Brown v. USA Taekwondo*,
  11 Cal. 5th 204 (2021) ......................................................................44

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .....................................................11, 17

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ..........................................................42

*Corradino v. Liquidnet Holdings Inc.*,
  2021 WL 2853362 (S.D.N.Y. July 8, 2021).......................................31

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019) .............................................................47

*Del Webb Cmtys., Inc. v. Partington*,
  652 F.3d 1145 (9th Cir. 2011) ..........................................................42

*Diep v. Apple, Inc.*,
  2024 WL 1299995 (9th Cir. Mar. 27, 2024) .....................................24

*Divino Grp. LLC v. Google LLC*,
  2023 WL 218966 (N.D. Cal. Jan. 17, 2023).......................................19

*Doe ex rel. Roe v. Snap, Inc.*,
  2023 WL 4174061 (5th Cir. June 26, 2023).......................................12

*Doe II v. MySpace, Inc.*,
  175 Cal. App. 4th 561 (2009) ......................................................12, 18

*Doe v. Fitzgerald*,
  2022 WL 2784805 (C.D. Cal. May 13, 2022)...............................31, 32

v

*Doe v. Grindr, LLC*,
2023 WL 7053471 (M.D. Fla. Oct. 26, 2023) ...............................................12, 20

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ...............................................................21, 22, 23

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) ..............................................................23

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ...................................................12, 17, 20, 25, 26

*Doe v. Snap, Inc.*,
2022 WL 2528615 (S.D. Tex. July 7, 2022),
*aff'd*, 2023 WL 4174061 (5th Cir. June 26, 2023) ...........................................24

*Doe v. Twitter, Inc.*,
2023 WL 8568911 (N.D. Cal. Dec. 11, 2023).....................................................35

*Doe v. Twitter, Inc.*,
555 F. Supp. 3d 889 (N.D. Cal. 2021), *aff'd in part rev'd in part
on other claims*, 2023 WL 3220912 (9th Cir. May 3, 2023)............12, 24, 30, 35

*Does #1-50 v. Salesforce.com, Inc.*,
2021 WL 6143093 (Cal. Ct. App. Dec. 30, 2021) (unpublished) .....................23

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022),
*cert. denied*, 143 S. Ct. 2560 (2023)................................... 10, 29, 30, 33, 34, 35

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ............................ 2, 13, 18, 23, 26, 27, 43, 44, 45

*Escola v. Coca-Cola Bottling Co.*,
24 Cal. 2d 453 (1944) .......................................................................................42

*Est. of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022)......................................................41

*Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) .........................................11, 14, 21, 28

vi

*Fields v. Twitter, Inc.*,
200 F. Supp. 3d 964 (N.D. Cal. 2016) .................................................................23

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ................................................................47

*FTC v. LeadClick Media, LLC*,
838 F.3d 158 (2d Cir. 2016) ......................................................18, 27

*Fyk v. Facebook, Inc.*,
2024 WL 150439 (N.D. Cal. Jan. 12, 2024)........................................25

*Gamache v. Airbnb, Inc.*,
2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017) (unpublished).....................47

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002) ................................................................45

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021),
*vacated on other grounds*, 598 U.S. 617 (2023) .................................................19

*Gonzalez v. Google LLC*,
2023 WL 373840 (U.S. filed Jan. 19, 2023)........................................28

*Green v. Miss U.S.A., LLC*,
52 F.4th 773 (9th Cir. 2022) ................................................................38

*Hardin v. PDX, Inc.*,
227 Cal. App. 4th 159 (2014) ...............................................................41

*Hegyes v. Unjian Enters., Inc.*,
234 Cal. App. 3d 1103 (1991) ..............................................................43

*Henderson v. Source for Public Data, L.P.*,
53 F.4th 110 (4th Cir. 2022) ................................................................19

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018),
*aff'd,* 765 F. App'x 586 (2d Cir. 2019)........................................20, 41

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) .................. 2, 13, 15, 16, 17, 18, 20, 22, 26, 29

vii

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ............................................................14, 15, 21, 23

*In re Facebook, Inc.*,
625 S.W.3d 80 (Tex. 2021)............................................ 12, 16, 17, 20, 22, 26, 29

*In re Facebook Simulated Casino-Style Games Litig.*,
2024 WL 2287200 (9th Cir. May 21, 2024).......................................................22

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
--- F. Supp. 3d ----,
2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ................................25, 27, 41, 42

*Jackson v. Airbnb, Inc.*,
2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) ..................................................25

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) .........................................................40, 41

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) ..........................................................................40

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016).............................................................12, 16, 18, 19

*Jane Doe No. 1 v. Uber Techs., Inc.*,
79 Cal. App. 5th 410 (2022) ............................................................................44

*Jane Doe v. Uber Techs., Inc.*,
No. S28332 (Cal. Apr. 10, 2024).......................................................................44

*Junior Sports Mags. Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) ..........................................................................15

*Kane v. Hartford Accident & Indem. Co.*,
98 Cal. App. 3d 350 (1979) .............................................................................47

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ....................................................................11, 21

*Koepke v. Loo*,
18 Cal. App. 4th 1444 (1993) ..........................................................................47

viii

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
   2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ....................................................31

*L.W. v. Snap Inc.*,
   675 F. Supp. 3d 1087 (S.D. Cal. 2023).............................................12, 23, 25, 35

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ...........................................................21, 24, 25

*Lewis v. Time Inc.*,
   83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) ..........36, 37

*Lorillard v. Pons*,
   434 U.S. 575 (1978)....................................................................................29

*M.H. v. Omegle.com, LLC*,
   2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ......................................................26

*Malwarebytes, Inc. v. Enigma Software Group USA, LLC*,
   141 S. Ct. 13 (2020).....................................................................................29

*McLeod v. Fessenden Sch.*,
   624 F. Supp. 3d 36 (D. Mass. 2022)................................................................31

*Merritt v. Countrywide Fin. Corp.*,
   2015 WL 5542992 (N.D. Cal. Sept. 17, 2015),
   *aff'd*, 783 F. App'x 717 (9th Cir. 2019) .........................................................39

*Modisette v. Apple Inc.*,
   30 Cal. App. 5th 136 (2018) ......................................................................43, 46

*NetChoice, LLC v. Bonta*,
   --- F. Supp. 3d ----, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023)...................38

*NetChoice, LLC v. Griffin*,
   2023 WL 5660155 (W.D. Ark. Aug. 31, 2023)..................................................38

*Neville v. Snap Inc.*,
   No. 22STCV33500 (Cal. Sup. Ct. Jan 2, 2024)................................................26

*O'Guinn v. Lovelock Corr. Ctr.*,
   502 F.3d 1056 (9th Cir. 2007) ......................................................................15

ix

*Ochoa v. Pub. Consulting Grp., Inc.*,
48 F.4th 1102 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 783 (2023) ...................10

*Pierson v. Sharp Mem'l Hosp., Inc.*,
216 Cal. App. 3d 340 (1989) ...................................................................................39

*Prager Univ. v. Google LLC*,
85 Cal. App. 5th 1022 (2022) .................................................................................19

*Prager Univ. v. Google LLC*,
951 F.3d 991 (9th Cir. 2020) ..................................................................................46

*PSINet, Inc. v. Chapman*,
362 F.3d 227 (4th Cir. 2004) ..................................................................................38

*Puri v. Khalsa*,
674 F. App'x 679 (9th Cir. 2017) ...........................................................................46

*Reno v. ACLU*,
521 U.S. 844 (1997).................................................................................................27

*Ripplinger v. Collins*,
868 F.2d 1043 (9th Cir. 1989) ................................................................................37

*Rodgers v. Christie*,
795 F. App'x 878 (3d Cir. 2020) ............................................................................40

*Sanders v. Acclaim Ent., Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002).....................................................................41

*Sandoval v. PharmaCare US, Inc.*,
730 F. App'x 417 (9th Cir. 2018) ...........................................................................15

*Saponaro v. Grindr, LLC*,
93 F. Supp. 3d 319 (D.N.J. 2015) .................................................................13, 20, 21

*Smith v. California*,
361 U.S. 147 (1959)..........................................................................................3, 35, 36

*Snap Inc. v. Superior Court*,
2024 WL 1316439 (Cal. Ct. App. filed Mar. 6, 2024) ..........................................27

*Snap Inc. v. Superior Court*,
    No. B335533 (Cal. Ct. App. Mar. 5, 2024) ....................................................25

*Social Media Cases*, 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ..............42

*State Dep't of State Hosps. v. Superior Court*,
    61 Cal. 4th 339 (2015) .....................................................................................47

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .........................................10, 11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023).........................................................................................35

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006) .........................................................................31

*United States v. Raniere*,
    55 F.4th 354 (2d Cir. 2022) .............................................................................31

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................5

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) ......................................................................32, 33

*United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
    858 F.2d 534 (9th Cir. 1988) ......................................................................36, 37

*United States v. Wearing*,
    865 F.3d 553 (7th Cir. 2017) ...........................................................................32

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994)...........................................................................................36

*V.V. v. Meta Platforms, Inc.*,
    2024 WL 678248 (Conn. Super. Ct. Feb. 16, 2024)....................................25, 26

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ...........................................................................36

*Vincent v. Trend W. Tech. Corp.*,
    828 F.2d 563 (9th Cir. 1987) ...........................................................................15

*Watters v. TSR, Inc.*,
  904 F.2d 378 (6th Cir. 1990) .................................................................41

*Wilson v. Midway Games*,
  198 F. Supp. 2d 167 (D. Conn. 2002).................................................41

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) .......................................................40, 41

*Wozniak v. YouTube, LLC*,
  100 Cal. App. 5th 893 (2024) ...............................................21, 23, 24

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) .................................................................10

*Ziencik v. Snap, Inc.*,
  2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .........................27, 40, 41

## Statutes

18 U.S.C.
  § 1591..............................................................2, 7, 29, 30, 32, 33
  § 1591(a)(1) ...............................................................29, 30, 32, 33
  § 1591(a)(2) ...............................................................................30, 33
  § 1591(e)(3) .......................................................................................30
  § 1595......................................................................................2, 7, 39

47 U.S.C.
  § 230...............................................................................*passim*
  § 230(b)(4) ..........................................................................................10
  § 230(c)(1) ........................................................1, 11, 13, 18, 22, 27
  § 230(e)(5)(A) ......................................................................................2

Communications Decency Act of 1996 ..................................................27

Memorandum from Maureen Mahoney, Deputy Director of Policy & Legislation, to California Privacy Protection Agency Board, "Agenda Item 3-Legislative Update and Authorization of CPPA Position on Pending Legislation. AB 1949 (Wicks): California Consumer Privacy Act of 2020: collection of personal information of a consumer less than 18 years of age" (May 3, 2024), available at https://cppa.ca.gov/meetings/materials/20240510_item3_ab1949_memo.pdf ..............................................................................................................28

**Rules**

Federal Rule of Civil Procedure
    Rule 9(b) ...........................................................................................9, 46
    Rule 12(b)(6)...........................................................................................8

**Constitutional Provisions**

U.S. Constitution, First Amendment ................................................*passim*

**Other Authorities**

141 Cong. Rec. H8469-70 .......................................................................10

Derek E. Bambauer, Mihai Surdeanu, *Authorbots*, 3 J. Free Speech L. 375 (2023)...................................................................................................19

Eric Goldman, *Omegle Denied Section 230 Dismissal*, Tech. & Mktg. L. Blog (July 20, 2022), https://tinyurl.com/yk6zm6tw .........................................26

Restatement (Third) of Torts: Product Liability (1998) ...........................39, 40, 41

S. Rep. No. 104-230 (1996) ....................................................................10

## INTRODUCTION

Plaintiff sues Grindr for operating an adult-only LGBTQ dating application where he met four men who sexually assaulted him as a teenager. Plaintiff admits that he lied about his age to access Grindr, and he does not allege Grindr knew anything about his attackers, much less that they were misusing its service. Still, Plaintiff claims Grindr is liable for failing to screen and block his unauthorized underage Grindr profile, failing to warn him about the risks of creating such a profile, and allegedly misrepresenting that it was safe to create a profile and use its service; and for engaging in federal sex trafficking.

Although no one should have to endure what Plaintiff has experienced and Grindr assiduously tries to limit its users to adults, Grindr is not liable for Plaintiff's injuries. The District Court correctly dismissed his claims with prejudice, and this Court should affirm on several independent grounds.

First, as the District Court concluded, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars Plaintiff's claims. Under the common law, an online publisher could be liable for imperfectly policing user content but not for ignoring user content altogether. Section 230 was designed to remove the resulting incentive for publishers to turn a blind eye to harmful user material on their platforms. Section 230 provides broad immunity for claims that would require online publishers (like Grindr) to monitor, screen, block, publish, or remove content

1

created by third parties. That is what Plaintiff's claims would do, by holding Grindr liable for failing to perfectly block unauthorized profiles and communications. Plaintiff's theory—that a social-networking service may be liable for injuries inflicted by one user on another because the two met by creating profiles and communicating through the service—has been rejected by every appellate court to consider it. Thus, this Court held that Section 230 barred claims that a website "steered" a plaintiff to another user from whom he bought a lethal dose of heroin. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1095, 1098 (9th Cir. 2019). And the Second Circuit—applying the *same test* as this Court—held that Section 230 barred claims that Grindr's allegedly "defective[] design[]" caused the plaintiff's off-site harassment. *Herrick v. Grindr LLC*, 765 F. App'x 586, 588, 591 (2d Cir. 2019). So, too, here, Section 230 applies.

The Fight Online Sex Trafficking Act's amendments to Section 230, 47 U.S.C. § 230(e)(5)(A), do not save Plaintiff's claim under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591, 1595. FOSTA exempts from Section 230 civil sex-trafficking claims that constitute a criminal violation of Section 1591. But Section 1591 requires a commercial sex act—a sex act performed in exchange for something of value—that Plaintiff has not alleged. It also requires Plaintiff to allege facts that Grindr knowingly directed, or participated in and benefited from, the specific acts to traffic him. But as the District Court found, he does not even allege

Grindr knew about his or his assailants' misuse of the service.

Second, although the District Court did not reach it, the First Amendment independently bars Plaintiff's claims. Under *Smith v. California*, 361 U.S. 147 (1959), Grindr cannot be liable for publishing Plaintiff's unauthorized profile or transmitting his communications with adults unless it knew the character of the profile or communications that made them unlawful. Plaintiff does not allege Grindr had such knowledge. The First Amendment further bars Plaintiff's attempt to require Grindr to implement more age-verification methods, as courts have repeatedly held such mandates impermissibly chill protected speech.

Third, Plaintiff fails to state essential elements of his claims, another ground the District Court did not reach. The sex trafficking claim fails for the same reasons that it is not exempt from Section 230. The product liability claims fail because communication and social networking services like Grindr are not "products" subject to product liability law in California. The negligence claims fail because California does not impose a duty on websites to protect users from other users' misconduct and because the creation and operation of a communications platform does not itself create a risk that generates a duty to prevent misuse. The negligent misrepresentation claim also fails because it does not identify any actionable misrepresentation of fact, Plaintiff's reliance, or Grindr's intent. All of the state claims fail because Plaintiff has not plausibly alleged proximate causation.

3

This case involves reprehensible crimes by third-party assailants. The law, however, does not allow Plaintiff to hold Grindr responsible for them. This Court should affirm.

## JURISDICTIONAL STATEMENT

Grindr agrees with Plaintiff's jurisdictional statement.

## ISSUES PRESENTED

1.      Whether the District Court correctly held that Section 230 preempted Plaintiff's claims because (a) each claim treats Grindr as a publisher of third-party content by imposing a duty on Grindr to monitor for, screen, and block unpermitted underage user profiles and communications, and (b) Plaintiff has not pled a TVPRA claim that qualifies for FOSTA's exception.

2.      Whether the First Amendment independently bars Plaintiff's claims because (a) Plaintiff fails to allege Grindr knew of the unlawful nature of the profile he created or the communications he exchanged, and (b) a legal obligation to implement age-verification measures impermissibly burdens adults' access to speech.

3.      Whether Plaintiff has alleged essential elements of his remaining state law claims, including whether (a) Grindr's communication service is a "product," (b) Grindr's provision of that service generated a legal duty to prevent third parties from misusing it, (c) an isolated opinion about the safety of Grindr's community is

4

an actionable misrepresentation of fact that Grindr intended and Plaintiff relied on to his detriment, (d) Grindr's provision of its communication service proximately caused injuries Plaintiff suffered as a result of third parties' criminal acts.

## STATEMENT OF THE CASE

### I.   Factual Background

The following facts are taken from the allegations of the First Amended Complaint (FAC) and sources the FAC references and relies upon. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### A.   Grindr Provides an Adult Dating Application

Grindr, a dating app for LGBTQ adults, permits users to "communicate with one another" and "exchange private messages." ER-170–71 ¶¶ 21, 25, 33.

Grindr prohibits minors from accessing the app and adults from communicating with anyone they believe is a minor.  ER-171 ¶¶ 29, 35, ER-175 ¶ 49, ER-182 ¶ 85, ER-192–93 ¶¶ 161, 165.  Its Terms and Conditions of Service state:

> NO USE BY UNDERAGE PERSONS. The Grindr Services are intended ONLY for legal adults. NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS (OR THE AGE OF MAJORITY IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY) MAY ATTEMPT, DIRECTLY OR INDIRECTLY, TO VIEW, DOWNLOAD, POSSESS, OR OTHERWISE USE THE GRINDR SERVICES.

ER-182 ¶ 85, ER-192–93 ¶¶ 161, 165 (referencing Grindr Terms & Conditions of Service, https://www.grindr.com/terms-of-service/) ("Terms").

5

Grindr requires users to input their birthdate before accessing its service. ER-170–71 ¶¶ 26, 29. The Grindr Terms state:

> <u>YOU MUST BE A LEGAL ADULT</u>. BY ACCEPTING THIS AGREEMENT, CREATING A USER ACCOUNT (AS DEFINED BELOW), AND ENTERING A DATE OF BIRTH FOR AGE VERIFICATION PURPOSES, YOU AFFIRMATIVELY REPRESENT AND WARRANT THAT: YOU ARE CURRENTLY EIGHTEEN (18) YEARS OF AGE OR OVER (OR THE AGE OF MAJORITY IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY); YOU ARE CAPABLE OF LAWFULLY ENTERING INTO AND PERFORMING ALL THE OBLIGATIONS SET FORTH IN THIS AGREEMENT[.]

Only users who represent they are at least the age of majority are authorized to access Grindr, create a user profile, post content, or communicate with others. ER-171 ¶¶ 29, 35, ER-175 ¶ 49, ER-182 ¶ 85, ER-192–93 ¶¶ 161, 165.

Although Grindr endeavors to operate a safe platform, (ER-182 ¶¶ 85, 86, ER-192–93 ¶¶ 161, 165),[1] like every other social-networking service, it does not control its users' content and communications or any resulting interactions:

> **SAFETY; YOUR INTERACTIONS WITH OTHER MEMBERS; NO CRIMINAL BACKGROUND OR IDENTITY VERIFICATION CHECKS.** PLEASE NOTE THAT GRINDR DOES NOT CONTROL ANY OF THE THINGS OUR USERS SAY OR DO. YOU ARE SOLELY RESPONSIBLE FOR YOUR USE OF THE GRINDR SERVICES AND YOUR INTERACTIONS WITH OTHER USERS (WHETHER ON OR OFF THE GRINDR SERVICES). GRINDR MAKES NO REPRESENTATIONS OR

---

[1] Grindr vigorously disputes Plaintiff's claims that Grindr aims to attract underage users. *See, e.g.,* Br. 5-6. In fact, Grindr uses a robust, multi-pronged strategy to keep underage users off its platform, including investing in industry-leading AI-based safety technology—something Grindr will prove should this litigation persist.

WARRANTIES AS TO THE CONDUCT, IDENTITY, INTENTIONS, LEGITIMACY, OR VERACITY OF ANY USERS.

### B. Plaintiff Lies About His Age To Post a User Profile to Grindr, Communicates With Other Users, and Is Assaulted

Plaintiff, a resident of rural Canada, began using Grindr after "no one in his family had observed any signs" he was gay, and he was "too ashamed to tell his parents." ER-168 ¶ 10, ER-175 ¶ 45. Plaintiff violated Grindr's Terms and "lie[d] about [his] age" to access Grindr. ER-171 ¶ 28, ER-175 ¶ 49. He created a profile and "exchanged messages" with four men between April 4, 2019, and April 8, 2019, with whom he engaged in sexual activity. ER-176–77 ¶¶ 53-63. Three of the men were convicted of statutory rape and making sexually explicit material available to a minor. ER-177 ¶ 66. Plaintiff disclosed the events to his mother after she caught him sneaking out of the house. *Id.* ¶ 64.

### C. Plaintiff Sues Grindr

Plaintiff asserts claims against Grindr for (i-iii) strict product liability (ER-183–87 ¶¶ 89-125), (iv) negligence (ER-188 ¶¶ 126-132), (v) negligent misrepresentation (ER-188–89 ¶¶ 133-142), and (vi) violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591, 1595 (ER-189–94 ¶¶ 143-74). Plaintiff claims Grindr is responsible for his injuries because it failed to screen or block him from posting a profile to Grindr and from communicating with his assailants, such as by implementing additional age-verification screens or other geographic or identity-based restrictions preventing the publication of content by minors, ER-177

7

¶¶ 65, 67, ER-185–86 ¶ 107; monitor his and his assailants' communications and use of the service, *id.*; warn about the risks of creating an unauthorized profile and communicating with other users (or warn other users that Plaintiff was a minor), ER-169 ¶ 14, ER-177 ¶ 65, ER-187 ¶ 122; and/or refrain from representing its service is "designed to create a safe and secure environment," ER-182–83 ¶¶ 87, 92, ER-188–90 ¶¶ 135, 138, 148.

## II.   Procedural History

Grindr moved to dismiss the FAC on April 28, 2023, under Federal Rule of Civil Procedure 12(b)(6) because (1) Section 230 bars Plaintiff's claims, (2) the First Amendment bars Plaintiff's claims, and (3) Plaintiff has failed to state any claim under California law or the TVPRA. *See* ER-135–65. The District Court dismissed Plaintiff's claims with prejudice on December 28, 2023. *See* ER-4–17. This appeal followed.

## SUMMARY OF ARGUMENT

The Court should affirm the District Court's decision for three reasons.

1.   Section 230 bars all of Plaintiff's claims. These claims each seek to hold Grindr liable for publishing third-party content—Plaintiff's unauthorized underage profile and subsequent communications with his adult assailants—that Plaintiff claims Grindr could have monitored, screened, and blocked through additional, more robust age-verification methods, geographic filters, user

8

monitoring, or unspecified warnings. Section 230 also bars Plaintiff's TVPRA claim because Plaintiff has not pled and cannot plead a commercial sex act, or Grindr's knowing perpetration or beneficiary participation in a scheme to traffic him.

2. The First Amendment independently forecloses Plaintiff's claims. To protect intermediaries and prevent collateral censorship, the First Amendment requires a plaintiff to show that the intermediary had actual knowledge of the allegedly harmful speech it published. Plaintiff makes no such allegation. The First Amendment also prohibits requiring Grindr to verify all of its users' ages, as age verification requirements for speech forums impermissibly chill speech and violate individual rights to speak anonymously.

3. Plaintiff also fails to allege necessary elements of his state law claims. (a) Plaintiff fails to allege any product liability claims because Grindr's social-networking service is not a product. (b) Plaintiff fails to allege a negligence claim because a service like Grindr does not have a legal duty to protect users like Plaintiff from injuries allegedly resulting from interactions with other users on the service. (c) Plaintiff fails to state a claim for negligent misrepresentation because Plaintiff alleges no misrepresentation of fact, no knowledge of falsity or intent to induce reliance, and no actual reliance, under any pleading standard, much less Federal Rule of Civil Procedure 9(b). (d) Plaintiff fails to allege that Grindr proximately caused his injuries, all of which were caused by third parties' intervening criminal acts.

## STANDARD OF REVIEW

This Court reviews a decision granting a motion to dismiss for failure to state a claim de novo. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1140 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2560 (2023). The Court may affirm dismissal on any basis fairly supported by the record, regardless of whether the District Court actually relied on that basis to dismiss. *See Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1106 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 783 (2023).

## ARGUMENT

### I. The District Court Correctly Held Section 230 Bars Plaintiff's Claims

One of Section 230's primary goals is to "encourage service providers to self-regulate the dissemination of offensive material over their services." *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997); *accord Batzel v. Smith,* 333 F.3d 1018, 1028 (9th Cir. 2003) (citing 47 U.S.C. § 230(b)(4) and 141 Cong. Rec. H8469-70). To do so, Section 230 overrules the common law principles applied by a New York trial court to hold online service Prodigy liable for defamatory comments posted by a user to one of its bulletin boards. *See* S. Rep. No. 104-230, at 194 (1996) (expressing intent to overrule *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), and "any other similar decisions"). Because Prodigy actively screened and edited bulletin board messages to prevent offensive content, the court applied common law publisher (rather than distributor)

10

principles, meaning that Prodigy could be liable for posts even if it did not know or have any reason to know they were defamatory. *Stratton Oakmont*, 1995 WL 323710, at *5.

In overruling this result, Congress eliminated the "grim choice" such a rule would present online services, *i.e.*, those that voluntarily filter content would be responsible for all posts, while "providers that bury their heads in the sand and ignore problematic posts altogether [would] escape liability." *Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc). Thus, Section 230(c)(1) provides online services immunity from claims that seek to hold them liable for publishing—or failing to monitor, screen, block, modify, edit, or remove—content created by third parties. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102, 1105 (9th Cir. 2009); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). This Court has held the statute establishes and must be interpreted to favor broad immunity at the pleading stage to "protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles" that alone could chill the publication of speech. *Roommates.com*, 521 F.3d at 1174-75; *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).

Section 230 bars Plaintiff's claims because they each seek to hold Grindr liable for failing to stop Plaintiff from posting an unauthorized underage user profile, for publishing that profile to adult users, and for failing to remove his profile or

11

monitor and block (or warn about the risks from) the messages he exchanged with his attackers. *See* ER-177 ¶¶ 65, 67, ER-184–86 ¶¶ 103, 107, 111, ER-187–88 ¶¶ 122, 131, 134. This is not a novel set of allegations. Every appellate court to confront similar claims has rejected them. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 416, 419-420 (5th Cir. 2008); *Doe ex rel. Roe v. Snap, Inc.*, 2023 WL 4174061, at *1 (5th Cir. June 26, 2023); *In re Facebook, Inc.*, 625 S.W.3d 80, 93-94 (Tex. 2021); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 568-69, 572-73 (2009).[2] These include dismissals where (as alleged here) a service allegedly failed to adequately verify users' age and identity, *e.g.*, *MySpace*, 528 F.3d at 419-20; *In re Facebook*, 625 S.W.3d at 84-85; *Jane Doe No. 1*, 817 F.3d at 16; *Doe II*, 175 Cal. App. 4th at 565, or failed to warn users about the alleged dangers that can arise from communicating with others, *e.g.*, *In re Facebook*, 625 S.W.3d. at 85, 93.

In fact, three federal courts have dismissed analogous claims *against Grindr*. One court recently dismissed materially identical negligence-based claims by a minor who also misrepresented his age to access and post a profile to Grindr, which Grindr then published to adults who assaulted him. *See Doe v. Grindr, LLC*, 2023

---

[2] Trial courts have done the same, including within this circuit. *See, e.g.*, *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1100 (S.D. Cal. 2023); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930-32 (N.D. Cal. 2021), *aff'd in part rev'd in part on other claims*, 2023 WL 3220912 (9th Cir. May 3, 2023).

WL 7053471, at *2-3 (M.D. Fla. Oct. 26, 2023). Two other courts rejected negligence, failure to warn, and product liability claims seeking to hold Grindr liable for failing to screen or block profiles or the exchange of content by users. *See Herrick*, 765 F. App'x at 590-91 (dismissing negligence, product liability, and "failure to warn" claims based on alleged failure to block fake accounts); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (dismissing negligence claims based on alleged failure to prevent assault of minor who met adult on service).

Plaintiff's claims are no different. They fall squarely within Section 230's protections against intermediary liability for online services.

## A. The Elements of Section 230 Immunity Are Established

The parties agree Section 230(c)(1) preempts civil liability where (1) the defendant is an interactive computer service provider and (2) the claim treats the defendant as the publisher or speaker of information (3) provided by a third-party. *See Dyroff*, 934 F.3d at 1097 (citing *Barnes*, 570 F.3d at 1100-01); *see* Br. 12, 13. The first and third elements are not in dispute: all agree Grindr offers an interactive computer service, Br. 21, ER-8, and Plaintiff does not dispute that his profile and the messages he exchanged with other users are provided by third parties. *See* Br. 34. The question is whether Plaintiff's claims seek to hold Grindr liable for publishing that content. Because they do, this Court should affirm.

13

A claim implicates a defendant's role as a publisher if it involves the defendant's conduct "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "[A]ny activity," in other words, "that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71. "[W]hat matters" is the nature of "the duty that the plaintiff alleges the defendant violated[.]" *Barnes*, 570 F.3d at 1102. If the duty effectively involves the exercise of editorial functions—such as deciding whether to publish, remove, edit, monitor, or screen third-party content—the plaintiff's claim treats the defendant as a publisher and is barred by Section 230. *Id.* at 1102, 1105; *accord HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (cited Br. 13, 17-19) (same test).

Although Plaintiff asserts his claims treat Grindr "as a manufacturer," Br. 27-29, each seeks to hold Grindr liable for failing to screen and block him from posting a profile to Grindr in violation of Grindr's policies, for publishing that profile to other matched users, and for failing to block communications between Plaintiff and those users. *See* ER-177 ¶¶ 65, 67, ER-184–86 ¶¶ 103, 107, 111, ER-187–88 ¶¶ 122, 131, 134.; *accord* Br. 6, 8, 32, 37.[3] Those duties—to screen and block unpermitted

---

[3] Plaintiff seems to suggest Grindr could also be liable for posting two videos on "social media platforms populated by youth" containing subject matter he claims is attractive to minors. *See* Br. 5, 8, 23, 36-37 (citing ER-171–74). He has waived that

user profiles through unspecified age-verification tools, prevent the publication of user content through geolocation restrictions, screen and block profiles that do not use a user's real name, or otherwise "monitor[] users" and/or warn them about the risks of engaging in unauthorized communication, Br. 8, 37, 39, 40 (citing ER-167–86, 170–76, 179)—squarely implicate Grindr's role as a publisher because they would require Grindr to make decisions about third party-content. Plaintiff's own authority affirms that Section 230 preempts claims premised on duties to "monitor third-party content" over which a platform has "editorial control." *HomeAway.com*, 918 F.3d at 682-83.

The Second Circuit dismissed similar claims against Grindr in *Herrick*. There, the plaintiff alleged he was harassed offline by someone who created an unverified Grindr profile and sent messages impersonating him. 765 F. App'x at 588. Like Plaintiff, Herrick asserted claims for negligence and failure to warn of or prevent his injuries. *Id.* Like Plaintiff, Herrick purported to base his claims on "Grindr's design and operation"—including its failure to screen and block unverified

theory because he did not develop it before the District Court. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 (9th Cir. 2007); *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 570-71 (9th Cir. 1987). It would fail in any case. The First Amendment prohibits Plaintiff from holding Grindr liable for truthful ads promoting its legal service. *See Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1113, 1116-17 (9th Cir. 2023). Plaintiff never alleges he viewed those ads, or that he relied on them. *Cf. Sandoval v. PharmaCare US, Inc.*, 730 F. App'x 417, 419 (9th Cir. 2018).

15

profiles—"rather than on its role as a publisher of third-party content." *Id.* at 590. But the Second Circuit rejected Herrick's attempt to plead around Section 230, holding these allegations sought to obligate Grindr to verify user identities before allowing an individual to publish a profile and post content, duties that affected Grindr's "choices about what content can appear on the website[.]" *Id.* at 590-91 (quoting *Jane Doe No. 1*, 817 F.3d at 21). Here, too, Plaintiff's claims treat Grindr as a publisher because they each seek to force Grindr to implement measures that would have screened Plaintiff's profile information and blocked Plaintiff from posting a profile and other content to other users. *See, e.g.*, ER-177 ¶¶ 65, 67, ER-184–86 ¶¶ 103, 107, 111, ER-187–88 ¶¶ 122, 131, 134; *accord* Br. 8, 37, 40 (citing ER-167–86, 170–76, 179).

Other appellate courts have reached the same conclusion in similar cases. The Texas Supreme Court, for example, dismissed claims seeking to require Facebook to "verify the identity and/or age of users," impose "restrictions on eligibility for accounts," and warn users about the risks of sex trafficking on its platforms. *In re Facebook*, 625 S.W.3d at 85, 93-94. The court found these claims treated Facebook as a publisher because, whether "couched as failure to warn, negligence, or some other tort of omission," the asserted duties would effectively and impermissibly "second-guess[] … Facebook's 'decisions relating to the monitoring, screening, and deletion of third-party content[.]'" *Id.* at 93 (citation omitted) (cleaned up).

16

In *MySpace*, the Fifth Circuit affirmed dismissal of claims alleging that a social networking website failed to implement adequate safety features, including age-verification software, to prevent a minor from accessing the site and communicating with her eventual assailant. 528 F.3d at 416, 419-22. The court agreed "[i]t is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on MySpace," the adult and minor "met and exchanged personal information which eventually led to an in-person meeting and the sexual assault." *Id.* at 419. The court thus concluded that "[n]o matter how artfully Plaintiffs seek to plead their claims," they seek to impose duties "directed toward MySpace in its publishing, editorial, and/or screening capacities." *Id.* at 420.

That is exactly what Plaintiff attempts here. Just like the *Herrick*, *In re Facebook*, and *MySpace* plaintiffs, Plaintiff asserts his claims "are not concerned with speech," but instead with designing and "releasing a product" that allows underage users to create and publish unpermitted profiles and exchange communications. Br. 29; *see also id.* at 23. But Plaintiff ignores that a duty to age verify—the core duty underlying his product liability, negligence, and TVPRA claims, and the statement on which he bases his negligent misrepresentation claim—would affect actions Grindr takes to monitor, screen, and block the publication of user profiles. *See Barnes*, 570 F.3d at 1103 (Section 230 barred liability for allowing and then failing to remove user profiles); *Carafano*, 339 F.3d at 1121, 1125 (same);

*accord Herrick*, 765 F. App'x at 590-91 (same); *Doe II*, 175 Cal. App. 4th at 565, 572-74 (same); *Jane Doe No. 1*, 817 F.3d at 16, 16 n.2, 21 (similar). And he cannot dispute that a duty to prevent trespassing minors from meeting adults would also require Grindr to screen published user profiles. *See Dyroff*, 934 F.3d at 1098 (Section 230 barred claim that website was responsible for matching user with another user who sold him lethal heroin). In fact, Plaintiff concedes his claims would compel Grindr to "monitor[] users" who post profiles and communications. Br. 40; ER-185–86 ¶ 107, ER-193 ¶¶ 165-66. The District Court was thus correct that Plaintiff's claims treat Grindr as a publisher because they "seek to impose liability on Grindr for failing to regulate third-party content" allowed on its platform. ER-11.

Unable to distinguish these cases, Plaintiff invents a circuit split between this Court and the Second Circuit and claims the District Court's analysis—as well as Grindr's arguments—conflict with this Court's precedent. *See* Br. 19, 20-34. Not so. Both the Second Circuit and this Court apply the *Barnes* test for Section 230(c)(1), and the rule—endorsed by Plaintiff, *see* Br. 23—that a claim treats a defendant as a publisher if it imposes a duty that involves the defendant's exercise of editorial functions. *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 175 (2d Cir. 2016) (quoting *Barnes*, 570 F.3d at 1102). *Herrick* cited and applied the same rule. 765 F. App'x at 590. So did the District Court, which, far from "suggest[ing]

18

the harm need not even be tied to third party content," Br. 3, assessed "what the duty at issue actually require[d]," and concluded Plaintiff's claims would each effectively require Grindr to block user profiles and communications on its service. ER-8–9 (citation omitted). Plaintiff's unsupported insistence that his claims impose no such duties (Br. 23) is a legal conclusion the Court need not accept. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The substance of his allegations is what counts, not his characterization. *See Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (rejecting plaintiffs' description of the duty imposed), *vacated on other grounds*, 598 U.S. 617 (2023); *Jane Doe No. 1*, 817 F.3d at 20 (same).[4]

Plaintiff cannot overcome Section 230 by reframing his claims as seeking to require Grindr to "warn" underage users about the risks of creating unauthorized profiles to communicate on its platform, or to not "misrepresent" those risks. *Cf.* ER-187 ¶¶ 116-25, ER-188–89 ¶¶ 133-42.; *see Barnes*, 570 F.3d at 1102 (plaintiff

---

[4] Amici contend *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022) shows that an age-verification duty "would not require Grindr to monitor, change, or remove any of the content posted on the app." *See* AAJ Br. 18. But *Henderson* applied an "improper content" standard inconsistent with this Court's decisions in *Roommates* and *Barnes*. *See Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1033 n.4 (2022); *Divino Grp. LLC v. Google LLC*, 2023 WL 218966, at *2 (N.D. Cal. Jan. 17, 2023); *Bride v. Snap Inc.*, 2023 WL 2016927, at *7 n.6 (C.D. Cal. Jan. 10, 2023) (all declining to apply *Henderson* for this reason). It ignores that an age-verification duty would require Grindr to screen and block user content, as the courts applying this Court's rule have found. *See also* Derek E. Bambauer, Mihai Surdeanu, *Authorbots*, 3 J. FREE SPEECH L. 375, 384 n.38 (2023) (describing *Henderson* as "baffling at best").

19

cannot evade Section 230 by renaming claims). As the District Court determined, (ER-8), these claims are "inextricably linked to Grindr's alleged failure to edit, monitor, or remove" particular content from particular users. *Herrick*, 765 F. App'x at 591 (dismissing similar failure-to-warn claim against Grindr); *see also Beckman v. Match.com, LLC*, 668 F. App'x 759, 759 (9th Cir. 2016) (Section 230 barred negligent misrepresentation claim). Requiring an online service to post "a warning" or make a representation "about third-party content is a form of editing" that implicates Section 230. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 & 592 n.8 (S.D.N.Y. 2018), *aff'd,* 765 F. App'x 586 (2d Cir. 2019); *see also Grindr*, 2023 WL 7053471, at *2 (preempting materially identical failure-to-warn claim).

As in *Herrick*, requiring Grindr to warn or make representations to users about "the potential for misuse of content posted to its site" treats Grindr as a publisher because it would expose Grindr to liability for trying but failing to perfectly block all unauthorized content. 306 F. Supp 3d at 592 & 592 n.8; *see also In re Facebook*, 625 S.W.3d at 93-94 (same). That could be content posted by minors, like Plaintiff, who misrepresent their age to access the service. *See Saponaro*, 93 F. Supp. 3d at 323. Or it could be content posted by adults soliciting minors for unlawful acts. *See MySpace*, 528 F.3d at 419-20. Either way, Plaintiff's defective warning and negligent misrepresentation claims—like his other product liability, negligence, and TVPRA claims—would require Grindr to *perfectly* screen and edit content,

undermining the purpose of Section 230 to protect even imperfect content-moderation efforts, lest publishers instead choose to avoid any liability by not moderating content at all. *See Roommates.com*, 521 F.3d at 1163-64; *accord* EPIC Br. 4-5. The statute accordingly preempts these claims that would hold Grindr responsible "for failing to monitor" its platform in a way that prevents unpermitted minors from improperly "us[ing] its service[]" to publish content. *Saponaro*, 93 F. Supp. 3d at 323-24. Any other rule "would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn of such information published by a defendant." *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914-15 (2024) (affirming dismissal). Section 230's free-speech protections cannot be "so casually eviscerated." *Kimzey*, 836 F.3d at 1269.

Plaintiff relies heavily on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), *HomeAway.com*, 918 F.3d at 681-84, and *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), none of which changes the analysis.

*Internet Brands* involved markedly different facts. That case permitted a failure-to-warn claim only because the defendant website allegedly had actual knowledge "from an outside source" that the two individuals who assaulted the plaintiff had been criminally charged for using the website to find victims. 824 F.3d at 848-49. The plaintiff, however, never alleged the website "transmitted any potentially harmful messages" between her and her attackers, or that her attackers

even "posted anything to the website" that lured her into danger. *Id.* at 851-52. The case concerned a narrow question: "whether it would be inconsistent with section 230(c)(1) … to require an interactive computer service provider to warn its users about the threat of a *known* sexual predator." *Id.* at 850-51 (emphasis added). Because the defendant's purported duty to warn in these circumstances did "not arise from an alleged failure to adequately regulate access to user content," and would not affect how the defendant "publishes or monitors such content," *id.* at 851, 853, this Court held Section 230 inapplicable. *See also In re Facebook Simulated Casino-Style Games Litig.*, 2024 WL 2287200, at *2 (9th Cir. May 21, 2024) (reinforcing that *Internet Brands* turned on "the source of the underlying duty" alleged).

Here, by contrast, Plaintiff alleges no facts to suggest Grindr had actual knowledge of his assailants or their conduct. *Cf.* ER-179–82 ¶¶ 78-86 (asserting only that Grindr should have known minors had improperly accessed the service and been victimized by other users in the past). And unlike in *Internet Brands*, Plaintiff's alleged injuries resulted from user-generated content—the publication of his user profile and communications to other users—that Plaintiff claims Grindr should have screened and blocked him from posting. *See Herrick*, 765 F. App'x at 591 (distinguishing *Internet Brands* for this reason); *In re Facebook*, 625 S.W.3d at 95

(same); *Wozniak*, 100 Cal. App. 5th at 914 (same); *Does #1-50 v. Salesforce.com, Inc.*, 2021 WL 6143093, at *7 (Cal. Ct. App. Dec. 30, 2021) (unpublished) (same).[5]

*HomeAway.com* is also distinguishable. That case involved a city ordinance prohibiting home-sharing platforms from completing booking transactions for properties not registered with the city. 918 F.3d at 680. In holding that Section 230 did not preempt the ordinance, this Court explained that compliance did not require platforms to monitor, screen, or block listings posted by users: liability only arose from completing a booking transaction for an unregistered listing. *Id.* at 682. Though in practice the easiest way to comply involved removing a listing, the Court explained compliance could be achieved without screening and blocking content. *Id.* at 683. That is not the case here, where each of Plaintiff's claims would hold Grindr liable simply for allowing him to post an unpermitted profile, as well as subsequent communications with adults. *See Dyroff*, 934 F.3d at 1098 (distinguishing *HomeAway.com*); ER-177 ¶¶ 65, 67, ER-184–86 ¶¶ 103, 107. Compliance with this duty *would* require Grindr to screen and block user profiles and communications, which Plaintiff suggests could be achieved through more age-

---

[5] District courts have distinguished *Internet Brands* on the same basis. *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1100; *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 973 (N.D. Cal. 2016); *Bride*, 2023 WL 2016927, at *7; *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 280-81 (E.D. Pa. 2022); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020).

verification screens, geolocation restrictions limiting the publication of content, automated monitoring for indicia of child use, or screening and blocking profiles that do not use a user's real name.  ER-185–86 ¶ 107.

*Lemmon* is irrelevant, too.  *See* ER-9–10.  That case involved a "speed filter" that allegedly encouraged users to drive fast, creating an "independent" danger *even if* the filter were never used to communicate content.  995 F.3d at 1093-94; *accord* Br. 27 (acknowledging *Lemmon* involved a feature that created a risk even without publishing content).  Here, however, Plaintiff claims he was injured because Grindr allowed him to publish a profile and communicate with adults—i.e., because Grindr failed to screen and block user-generated content—*not* because of any static design risk divorced from publication.  *See* ER-175 ¶ 50, ER-179 ¶¶ 75-77, ER-181–82 ¶¶ 83, 85-86, ER-193 ¶¶ 165-66.   As this Court reaffirmed, *Lemmon* has no application to allegations like these, where the plaintiff's injury is not "fully independent" of the defendant's "role in monitoring or publishing third-party content."  *Diep v. Apple, Inc.*, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024) (citation omitted) (affirming dismissal).   The California Court of Appeal distinguished *Lemmon* for the same reason earlier this year.  *See Wozniak*, 100 Cal. App. 5th at 913.[6]

---

[6] As has virtually every district court presented with comparable allegations.  *See, e.g.*, *Doe v. Twitter, Inc.*, 555 F. Supp. 3d at 929-30; *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022), *aff'd*, 2023 WL 4174061 (5th Cir. June

Against this authority, Plaintiff cites two district court decisions and an order from a Los Angeles County Superior Court so aberrant that it has been stayed pending the California Court of Appeal's decision whether to permit an interlocutory appeal. *See* Order Granting Stay, *Snap Inc. v. Superior Court*, No. B335533 (Cal. Ct. App. Mar. 5, 2024). None changes the analysis.

First, far from greenlighting age-verification and user-matching product liability and negligence claims like Plaintiff's, *see* Br. 32-33, the MDL district court rejected Plaintiff's interpretation of *Lemmon* and confirmed that Section 230 preempts claims that an online service "should have used age-verification to … limit platform access to children," who could otherwise access features that "recommend third-party content," including "adult profiles." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, --- F. Supp. 3d ----, 2023 WL 7524912, at *12, *14 (N.D. Cal. Nov. 14, 2023) (favorably citing *MySpace*). Unlike the claims that survived in *In re Social Media*—all premised on alleged content-independent defects that supposedly made the platforms "addictive," *id.* at *3—Plaintiff's claims about Grindr's allegedly "ineffective or nonexistent age verification technology"

---

26, 2023); *L.W.*, 675 F. Supp. 3d at 1097; *Anderson*, 637 F. Supp. 3d at 281; *Fyk v. Facebook, Inc.*, 2024 WL 150439, at *2 (N.D. Cal. Jan. 12, 2024); *Bride*, 2023 WL 2016927 at *5-6; *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022); *V.V. v. Meta Platforms, Inc.*, 2024 WL 678248, at *10 (Conn. Super. Ct. Feb. 16, 2024).

and user-matching functions, (ER-185–86 ¶¶ 106-07, ER-188 ¶ 129), involve Grindr's asserted failure to screen and block the publication of third-party content: Plaintiff's unpermitted user profile, the profiles of matched adults, and their communications.  Section 230 bars negligence, product liability, and failure to warn or represent claims imposing these obligations.  *See Dyroff*, 934 F.3d at 1098; *Herrick*, 765 F. App'x at 591; *In re Facebook*, 625 S.W.3d at 84-85, 93; *MySpace*, 528 F.3d at 422.

Plaintiff's other principal authorities—*A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022), and *Neville v. Snap Inc.*, No. 22STCV33500 (Cal. Sup. Ct. Jan 2, 2024)—are outliers that misapply (or ignore) this Court's precedents and conflict with every other decision, including in *A.M.*'s case an opinion dismissing near-identical claims against the same defendant. *See M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *1 (M.D. Fla. Jan. 10, 2022); *see also* Eric Goldman, *Omegle Denied Section 230 Dismissal*, Tech. & Mktg. L. Blog (July 20, 2022), https://tinyurl.com/yk6zm6tw (*A.M.* was "obviously wrong").  The District Court correctly declined to follow *A.M.* into error, *see* ER-16, as have other trial courts. *See, e.g., V.V.*, 2024 WL 678248, at *10-11 & n.13 (rejecting *A.M.* as inconsistent with precedent).[7]  And to the extent the order in *Neville* is even citable, its opinion

---

[7] Even by *A.M.*'s tortured reasoning, the case has no application to claims like Plaintiff's involving services that do not randomly match users, but instead (like

permitting claims to proceed against Snap for connecting users to fentanyl dealers is foreclosed by this Court's opposite decision in *Dyroff*, 934 F.3d at 1098. *See also* Br. of Professor Eric Goldman as Amicus Curiae, *Snap Inc. v. Superior Court*, 2024 WL 1316439, at \*16-17 (Cal. Ct. App. filed Mar. 6, 2024) (addressing the trial court's errors).[8]

### B.      Applying Section 230 Supports Congressional Policy

Foreclosed by law, Plaintiff asks this Court to defy precedent and fashion a new framework for Section 230 that, he claims, will serve its supposed purpose of protecting children online. *See* Br. 15-17. The Court should decline this invitation.

At the outset, Plaintiff's premise is wrong. Although parts of the Communications Decency Act of 1996 *were* intended to protect children, the Supreme Court held those portions unconstitutional in *Reno v. ACLU*, 521 U.S. 844 (1997). Section 230(c)(1) survived because it "had a different objective: To preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." *LeadClick*, 838 F.3d at 173 & n.6 (internal quotation marks omitted). Far from operating to

---

Grindr) recommend existing profiles. *See* 614 F. Supp. 3d at 820-21; *accord In re Social Media*, 2023 WL 7524912, at \*14 (recognizing this).

[8] Plaintiff suggests the claim in *Ziencik v. Snap, Inc.*, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023), "was not barred by Section 230." Br. 31. In fact, *Ziencik* did not reach Section 230, dismissing claims on other grounds. 2023 WL 2638314, at \*4-8.

sanitize the internet for minors, Section 230 immunizes "platforms from liability for failing to perfectly screen unlawful content" *even if* that content is harmful. *See* Br. of Sen. Wyden and Former Rep. Cox as Amici Curiae, *Gonzalez v. Google LLC*, 2023 WL 373840, at *10 (U.S. filed Jan. 19, 2023) (authors of Section 230).

That is exactly the fact pattern here. Plaintiff seeks to hold Grindr liable for failing to implement more effective safety features that would have purportedly enabled Grindr to screen and prevent underage users like himself from posting unpermitted profiles and exchanging messages with other Grindr users. *See* ER-185–86 ¶ 107. Indeed, Plaintiff attempts to weaponize the fact that Grindr *does* take measures to screen and block such unpermitted underage profiles, (ER-171 ¶¶ 29, 35, ER-182 ¶¶ 85-86), generating the very sort of moderators' dilemma Section 230 serves to prevent. *See Roommates.com*, 521 F.3d at 1163-64; *accord* EPIC Br. 4-5.[9]

---

[9] Verifying a user's age is not, as Plaintiff suggests, something that can be done accurately without significant privacy concerns. For this reason, earlier this year, a California state agency recommended that the state legislature *not* remove from its privacy law a requirement that a service have "actual knowledge" to be subject to certain restrictions on the use of personal information, stating that "there is currently no privacy-protective way to determine whether a consumer is a child." Memorandum from Maureen Mahoney, Deputy Director of Policy & Legislation, to California Privacy Protection Agency Board, "Agenda Item 3—Legislative Update and Authorization of CPPA Position on Pending Legislation. AB 1949 (Wicks): California Consumer Privacy Act of 2020: collection of personal information of a consumer less than 18 years of age" (May 3, 2024), available at https://cppa.ca.gov/meetings/materials/20240510_item3_ab1949_memo.pdf.

28

The idea that courts have stretched Section 230 beyond its original purpose has no basis in reality. *Cf.* Br. 20. "Congress, with knowledge of the prevailing judicial understanding of [S]ection 230, has twice *expanded* its scope," in 2002 and again in 2010. *In re Facebook*, 625 S.W.3d at 92. The one time Congress limited Section 230 was to carve out a narrow claim based on criminal misconduct Plaintiff cannot establish. *See infra* Part I.C. Congress "can be presumed to have had knowledge of the interpretation given" to Section 230 that bars Plaintiff's state tort claims here, *Lorillard v. Pons*, 434 U.S. 575, 581 (1978), indicating no reservations with the prevailing approach. Justice Thomas's solo opinion in *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S. Ct. 13 (2020) (Mem.) (Thomas, J., statement) (cited Br. 20), only underscores that the "prevail[ing]" interpretation of Section 230 bars Plaintiff's claims. *Id.* at 15-17 (Thomas, J., statement) (citing *Herrick*, 765 F. App'x at 591, as good law).

## C. FOSTA Does Not Exempt Plaintiff's TVPRA Claims

FOSTA exempts a civil sex-trafficking claim from Section 230 only if it establishes a platform's "own conduct" is a criminal violation of 18 U.S.C. § 1591. *Reddit*, 51 F.4th at 1141; *accord* Br. 35-36. No such crime is pled here.

Section 1591 establishes two criminal offenses. Under Section 1591(a)(1), it is a felony for a *direct perpetrator* to (1) knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person, (2)

knowing or in reckless disregard of the fact that the person has not attained the age of 18, (3) knowing the person will be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a)(1); *Doe #1*, 2023 WL 3220912, at *2. The standard for *beneficiary liability* pursuant to 18 U.S.C. § 1591(a)(2) is even more demanding. *See Reddit*, 51 F.4th at 1141. Beneficiaries are liable only if they (1) knowingly (2) benefit financially or receive anything of value (3) from participation in a venture that has engaged in sex trafficking. *See* 18 U.S.C. § 1591(a)(2). "[A] defendant must have *actual knowledge* of the trafficking and must assist, support, or facilitate the trafficking venture." *Reddit*, 51 F.4th at 1141 (internal quotation marks omitted, cleaned up, emphasis added).

Relying entirely on *A.M. v. Omegle.com LLC*, 2023 WL 1470269 (D. Or. 2023) (Br. 35-44), Plaintiff claims Grindr is liable for trafficking him. The District Court correctly rejected this contention, (ER-15–16), as Plaintiff cannot plausibly allege facts sufficient to indict Grindr for sex crimes.

### 1.    Plaintiff fails to allege any "commercial sex act," barring all claims under 18 U.S.C. § 1591

Plaintiff's perpetrator and beneficiary TVPRA theories both require alleging that Plaintiff engaged in a "commercial sex act." 18 U.S.C. § 1591(a)(1)-(2). He has not done so. A commercial sex act is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). This means "a commercial transaction through which money"—or some other thing of value—

"is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006). In other words, there must be some sort of quid pro quo for the sex acts. *See United States v. Raniere*, 55 F.4th 354, 363 (2d Cir. 2022) (finding "on account of" has nearly the same meaning as "because of" or "a *quid pro quo*").

Plaintiff argues Grindr collects revenue from advertisers who know Grindr's service sometimes leads to sex. *See* Br. 38-39. But Grindr does not exchange "sex acts" with advertisers for those revenues. The question is whether the sex acts *Plaintiff* engaged in were provided in exchange for something of value. *See, e.g.*, *Doe v. Fitzgerald*, 2022 WL 2784805, at *5 (C.D. Cal. May 13, 2022) (granting motion to dismiss in the absence of such an exchange); *McLeod v. Fessenden Sch.*, 624 F. Supp. 3d 36, 43 (D. Mass. 2022) (same); *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021) (same); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 & 16 n.16 (W.D. Ark. Dec. 24, 2013) (same). Plaintiff's contrary theory would make sex actionable as commercial trafficking simply because it was somehow enabled by a business. Restaurants could be liable for collecting money from diners whom they know might have sex.

The criminal sex acts alleged in this case are abhorrent, but they are not *commercial* sex acts. Because Plaintiff does not allege he was enticed to have sex in exchange for anything, both trafficking claims fail.

31

### 2. Plaintiff fails to allege Grindr knowingly perpetrated a specific attempt to traffic him under 18 U.S.C. § 1591(a)(1)

To state a direct perpetrator claim under Section 1591(a)(1), a plaintiff must allege the defendant acted with knowledge and planned to "cause his victim to engage in a commercial sex transaction." *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010). The "logical meaning" of this requirement "is that it describes the acts that the defendant *intends* to take—that is, that he means to 'cause' the minor to engage in commercial sex acts." *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017) (citing *Todd*, 627 F.3d at 334). Plaintiff's claim fails because he does not and cannot allege Grindr led him to use its service knowing (i) he was a minor and (ii) someone would sexually assault him.

First, Plaintiff does not allege Grindr knew he was a minor. In fact, as the District Court found, (ER-15), Plaintiff admits he told Grindr he was an adult. *See* ER-170–71 ¶¶ 26, 29, ER-175 ¶ 49. Plaintiff instead alleges Grindr *should have* known he was a minor because his account operated in the vicinity of a high school. ER-169 ¶ 12, ER-175–76 ¶¶ 52-53, ER-176–77 ¶¶ 62, 65. But adults also live and work near high schools. And regardless, Plaintiff alleges no facts showing Grindr's *actual knowledge* of his age. *See, e.g., Fitzgerald*, 2022 WL 2784805, at *7 (dismissing for this reason).

Second, Plaintiff alleges nothing to suggest Grindr planned to cause him to engage in an illicit sex act. *Todd*, 627 F.3d at 334. That Grindr had allegedly learned

of assaults between other users is insufficient. *Cf.* ER-179–83 ¶¶ 75-88. The statute "requires knowledge of a future action" that "will in the future cause" a specific plaintiff—the "person" trafficked, 18 U.S.C. § 1591(a)(1)—to be assaulted. *Todd*, 627 F.3d at 334. This is also dispositive.

### 3. Plaintiff fails to allege Grindr knowingly benefited from participating in a sex-trafficking venture under 18 U.S.C. § 1591(a)(2)

To state a beneficiary claim, Section 1591(a)(2) requires Plaintiff to plausibly allege Grindr (i) knowingly participated in a sex trafficking venture and (ii) knowingly received a benefit as a result. *See Reddit*, 51 F.4th at 1145. The participation element requires Plaintiff to identify "specific conduct" by Grindr that knowingly furthered his attackers' "sex trafficking venture." *Id.* And the benefit element requires Plaintiff to allege "a causal relationship between" Grindr's "affirmative conduct furthering the sex-trafficking venture and receipt of a benefit," and Grindr's actual knowledge of that connection. *Id.* Nothing like that is—or could be—alleged here.

*Reddit* is instructive. There, this Court affirmed dismissal of Section 1591(a)(2) claims against Reddit for failing to prevent circulation of sexually explicit images of minors. 51 F.4th at 1145-46. It held that even if Reddit "provides a platform where it is easy" for sex traffickers "to share child pornography," "these allegations suggest only that Reddit 'turned a blind eye' to the unlawful content

33

posted on its platform, not that it actively participated in sex trafficking." *Id.* at 1145 (citation omitted). The Court also rejected the knowing benefit allegations, holding that even if Reddit "makes money from advertising on all popular subreddits," some of which may contain child pornography, those general benefits" are insufficient to establish a known "connection between the child pornography posted on Reddit and the revenue Reddit generates." *Id.* at 1145-46.

The District Court correctly concluded that Plaintiff's beneficiary claim suffers the same defects. *See* ER-16. Plaintiff cannot plausibly allege Grindr knowingly and "actively participated" in his attackers' crimes, or that Grindr knowingly earned revenue *because of* that participation. *Reddit*, 51 F.4th at 1145-46. Plaintiff relies solely on *A.M.* to argue these elements are satisfied. *See* Br. 40-41. He claims Grindr knowingly participates in a sex trafficking venture because it continues to operate a service that has allegedly been misused to enable illegal sex acts. *Id.* at 40. And he claims Grindr knowingly benefits from that asserted "participation" because it receives advertising revenue from operating. *Id.* at 41. *Reddit* rejected both of these arguments. *See* 51 F.4th at 1145-46 (maintaining operations despite allegations of known misconduct was insufficient to allege "active[] participation"; advertising revenue from those operations insufficient to establish a causal benefit). Although Plaintiff purports to distinguish *Reddit* because Grindr "facilitate[s] private sexual connections" that allegedly create "greater

opportunity" for misconduct than Reddit's groups and threads, Br. 41, he fails to explain how this is different from Reddit "provid[ing] a platform" for users' misconduct and "mak[ing] money from advertising on all popular" threads across its service. *Reddit*, 51 F.4th 1145-46; *see also Doe #1*, 2023 WL 3220912, at *1 (dismissing because *Reddit* "requires a more active degree of participation" than passive operation) (internal quotation marks omitted).[10]

Considering similar federal abettor claims, the Supreme Court held "creating" social-networking services "generally available to the internet-using public" and "setting up their algorithms" to "match[]" and "display content relevant to user inputs" was insufficient to "state a claim for culpable assistance of participation" in one user's attack on the plaintiff. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 498, 500-01 (2023). That is what Plaintiff alleges, and it fails for the same reason.

## II. The First Amendment Bars Plaintiff's Claims

The First Amendment prohibits holding a forum for speech liable for the content it publishes without proof that the forum at least had "knowledge … of the contents" of the speech in question. *Smith*, 361 U.S. at 149. Because Plaintiff's claims seek to impose liability based on what Grindr "should have known" about the speech it distributed "regardless of whether" Grindr had knowledge of its contents,

---

[10] Other than *A.M.*, district courts applying *Reddit* have held similarly. *See, e.g.*, *L.W.*, 675 F. Supp. 3d at 1100; *Doe v. Twitter, Inc.*, 2023 WL 8568911, at *8 (N.D. Cal. Dec. 11, 2023); ER-16.

(ER-183–87 ¶¶ 89-125, ER-188–89 ¶¶ 129, 136-37), they run afoul of this rule. This provides an independent basis to affirm.

*Smith* held invalid a law making booksellers strictly liable for selling "obscene" books because it would have resulted in self-censorship. 361 U.S. at 153-54. The problem was "[t]he bookseller's limitation in the amount of reading material with which he could familiarize himself." *Id.* If the bookseller could be liable merely for stocking offensive books, the Court reasoned, the risk of liability "would tend to restrict the public's access to forms of the printed word" and "have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id.* at 151, 153-54; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73-74, 78 (1994) (*Smith* required construing statute to punish only knowing distribution of illicit content).

Under *Smith,* a "distributor" may "not be punished if he did not have some 'knowledge of the contents' of the allegedly" unlawful material. *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 858 F.2d 534, 539 (9th Cir. 1988) (citation omitted); *see also Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (under *Smith*, any law that "chills the exercise of First Amendment rights must contain a knowledge element") (quoting *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992)). Thus, in *Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983), the

plaintiff failed to state a claim against distributors of Time Magazine because "[n]o specific facts" were "alleged to show that the distributor defendants … had knowledge of the defamatory nature" of the speech published. *Id.* at 464-65. "[T]here can be no liability" against a distributor of third-party speech consistent with "[t]he high standards required by the First Amendment," the court found and this Court affirmed, absent scienter and "specific factual allegations concerning actual knowledge." *Id.* at 463, 465.

The First Amendment bars Plaintiff's claims. Plaintiff does not allege Grindr knew the contents of his communications with his assailants, nor that those assailants were communicating through Grindr to later commit crimes. Rather, Plaintiff claims Grindr generally knew *some* users had previously used the service to arrange illegal activities. *See* ER-179–83 ¶¶ 75-88. In such circumstances, permitting Plaintiff to impose liability on a publisher like Grindr for enabling him to communicate with men who attacked him "would have an undoubted chilling effect on speech." *U.S. Dist. Ct.*, 858 F.2d at 539 (citation omitted); *see also Ripplinger v. Collins*, 868 F.2d 1043, 1056 (9th Cir. 1989) (provision permitting liability against distributors who "should know" speech contains obscenity "unduly chills" speech).

Plaintiff did not contest this in the District Court, contending only that the First Amendment does not apply because his claims concern Grindr's conduct, not speech. But calling the object of his claims "something other than speech does not

make it so." *Green v. Miss U.S.A., LLC*, 52 F.4th 773, 780 (9th Cir. 2022). The "conduct" Plaintiff targets is Grindr making content available online that Plaintiff claims Grindr "should have known" would invite illicit activity. ER-183–87 ¶¶ 89-125, ER-188–89 ¶¶ 129, 136-37. "[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001).

The threatened chilling effect is amplified here given the specific duties Plaintiff seeks to impose. Mandatory age and identity verification screens violate the First Amendment by deterring adults from accessing and engaging in protected speech. *See, e.g., ACLU v. Mukasey*, 534 F.3d 181, 196-97 (3d Cir. 2008) (applying mandate from *Ashcroft v. ACLU*, 542 U.S. 656, 666-67 (2004)); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236-37 (4th Cir. 2004); *NetChoice, LLC v. Bonta*, --- F. Supp. 3d ----, 2023 WL 6135551, at *12 (N.D. Cal. Sept. 18, 2023); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *17 (W.D. Ark. Aug. 31, 2023). Because Grindr serves LGBTQ adults who, "without the assurance of anonymity," may face a stigma for using the app, the deterrent effect and breadth of collateral censorship—beyond the chilling effect of potential intermediary liability unbound by scienter generally—is especially grave. *PSINet*, 362 F.3d at 236-37.

### III. Plaintiff Fails To Allege Necessary Elements Of His Claims

This Court may also affirm because Plaintiff fails to state any claim. His failure to state a federal sex trafficking claim under 18 U.S.C. § 1595 (Count VI) is addressed above. *See supra* Part I.C. His state-law claims may also be dismissed for the following reasons.

#### A. Grindr's Communication Service Is Not A Product

Product liability law does not apply to intangible services like Grindr, or to redress harms caused by expression.

California does not apply product liability to services like Grindr. *See Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989). Its law extends product liability only to "tangible goods—not intangible goods or services." *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *22 (N.D. Cal. Sept. 17, 2015), *aff'd*, 783 F. App'x 717 (9th Cir. 2019). This approach follows the Restatement (Third) of Torts: Product Liability (1998), which defines "products" as "tangible items, such as tires, automobiles, and insecticides," *id.* at § 1, and states that "[s]ervices, even when provided commercially, are not products," *id.* at § 19(b). Appellate courts nationwide "are unanimous in refusing to categorize commercially-provided services as products." *Id.* § 19 cmt. f (citing cases).

Although this Court has not addressed the question, the majority of courts applying California law have held that an online "platform that connects users," like

Grindr, is a service, not a product subject to product liability. *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (granting motion to dismiss); *see also Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *1, *4 (C.D. Cal. Feb. 3, 2023) (holding that a "communication platform" like Snapchat is a service). And the Third Circuit similarly held that an electronic service that employs an algorithm to convey "information, guidance, ideas, and recommendations" to users is not a product under New Jersey law that also follows the Restatement. *See Rodgers v. Christie*, 795 F. App'x 878, 880 (3d Cir. 2020).

Plaintiff's product liability claims also fail because they seek relief for harms allegedly resulting from Grindr's facilitation of communication. ER-183–84 ¶¶ 98, 100, 102-03, ER-186 ¶ 111. Product liability law does not apply to "words and ideas" or a "publisher's role in bringing ideas and information to the public." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034, 1035 n.8 (9th Cir. 1991) (applying California law); *see also* Restatement (Third) of Torts: Prod. Liab. § 19 cmt. d (1998) (no product liability where claim results from information published through tangible medium). This Court recognizes that the "purposes served by product liability law" are not suited to "the unique characteristics of ideas and expression," and any other rule would chill speech in tension with the First Amendment. *Winter*, 938 F.3d at 1033-34; *see also James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002) (video games and internet communications are not products; limitation

40

avoids "constitutional problems under the First Amendment"); *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990) (same).[11]

The software cases Plaintiff cited in the District Court do not support his position. "[T]here are no cases" concerning whether software is a product for product liability purposes. Restatement (Third) of Torts: Prod. Liab. § 19 (1998). The portion of *Winter* Plaintiff cited merely "suggested in dictum that computer software might be considered a product." Restatement (Third) of Torts: Prod. Liab. § 19 (1998) (discussing 938 F.2d at 1035). Plaintiff's citation to *Hardin v. PDX, Inc.,* 227 Cal. App. 4th 159, 170 (2014), also relied on dictum, as the court there refused to decide the question because the defendant had not raised it. *Herrick*, too, found it "need not address" the question. 306 F. Supp. 3d at 592 n.9.

Among federal courts applying California law, only *In re Social Media* held that certain *aspects* of social media services—none at issue here—could be considered products. 2023 WL 7524912, at *29-34. But it also held that social media platforms themselves were not "akin to tangible personal property" and thus

---

[11] District courts applying the Restatement have also held that there is "no strict liability" for "forms of media" like Grindr that distribute speech and expression. *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (Netflix); *see also, e.g.*, *Wilson v. Midway Games*, 198 F. Supp. 2d 167, 170, 174 (D. Conn. 2002) (video games); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (video games); *Jackson*, 639 F. Supp. 3d at 1011 (Airbnb); *Ziencik*, 2023 WL 2638314, at *4 (Snapchat).

41

could not "as a global matter" be classified as products. *Id.* at \*26. And in any event, its *sui generis* analysis that required disaggregating services into product-like features is unprecedented and conflicts with decisions from California courts, including a parallel decision from the JCCP court reaching the opposite conclusion. *See Social Media Cases*, 2023 WL 6847378, at \*14-21 (Cal. Super. Ct. Oct. 13, 2023). This Court should not advance Plaintiff's "trailblazing initiatives" to revise state law, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011), and should decline his invitation to extend that law in new directions absent "an indication from the state courts or the state legislature that such an extension would be desirable." *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (cleaned up).

The policy rationale for product liability reinforces this conclusion and supports dismissal. Product liability reflects a judgment that physical product makers are "best situated" to "reduce the hazards to life and health" of their goods because they can anticipate and guard against them during the manufacturing process and distribute the resulting costs on a small per-unit basis among consumers. *Escola v. Coca-Cola Bottling Co.*, 24 Cal. 2d 453, 462 (1944) (Traynor, J., concurring). But it is difficult to anticipate how an online communication service will be used to harm others and little a service provider can do to prevent such harms. Nor may a service like Grindr distribute costs among purchasers, as it does not sell

42

its service. The rationale animating product liability policy simply has no application to a service like Grindr.

### B. Plaintiff Fails To Allege An Actionable Duty In Negligence

Duty is an "essential element" in "any negligence suit." *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 143 (2018). Because Plaintiff fails to allege a legal duty of care was owed, his negligence claim "is fatally defective." *Hegyes v. Unjian Enters., Inc.*, 234 Cal. App. 3d 1103, 1111 (1991).

Plaintiff alleges Grindr should have prevented communications between him and his attackers. ER-188 ¶¶ 127, 131. But websites do not owe users a legal duty when they "facilitate[] communication, in a content-neutral fashion, of [their] users' content." *Dyroff*, 934 F.3d at 1101 (applying California law). That some other users allegedly misused the service before is immaterial. *Cf.* ER-179–82 ¶¶ 78-85, ER-188 ¶ 130. The *Dyroff* plaintiff alleged a website was obligated to design its "recommendations and notifications" to stop users from connecting for harmful reasons, such as to buy and sell drugs. 934 F.3d at 1095, 1101. This Court rejected that argument, holding that this amounted to "nonfeasance"—a failure to affirmatively help a user—and did not create "an ordinary duty of care" under California law since no "special relationship" exists between websites and users. *Id.*

at 1100-11; *see also Beckman v. Match.com, LLC*, 743 F. App'x 142, 143 (9th Cir. 2018) (same under Nevada law).[12]

Plaintiff conceded in the District Court that he could not allege a duty based on nonfeasance and instead claimed a duty in *misfeasance* because Grindr itself allegedly created a risk of sexual abuse. *See Dyroff*, 934 F.3d at 1100-01 (explaining the distinction). But the creation and operation of a communication platform does not by itself create a risk actionable for misfeasance unless a tortfeasor's actions are a "necessary component" of the service. *Jane Doe No. 1 v. Uber Techs.*, *Inc.*, 79 Cal. App. 5th 410, 427 (2022). Thus, even where "assault and rape by third parties" is allegedly a foreseeable result of a defendant's service, or where the tortious conduct allegedly "may not have occurred absent the defendant's actions," there is no misfeasance duty. *Id.* The *Uber* decision—which the California Supreme Court declined to reverse despite four requests for depublication and a related certification request from this Court, *see Jane Doe v. Uber Techs., Inc.*, No. S28332 (Cal. Apr.

---

[12] Even if Plaintiff could allege facts establishing a special relationship, it would not suffice to establish a duty of care under the policy factors the California Supreme Court also requires courts to consider. *See Brown v. USA Taekwondo*, 11 Cal. 5th 204, 222 (2021). The California Court of Appeal recently rejected a plaintiff's similar attempt to obligate Lyft to screen passengers' criminal history to protect drivers from harm, holding that such a duty was unmanageable and conflicted with public policy even assuming Lyft and its drivers had a special relationship. *See Al Shikha v. Lyft, Inc.*, --- Cal. Rptr. 3d ---, 2024 WL 2238661, at *3 n.3, *16 (Cal. Ct. App. May 17, 2024). The screening duty Plaintiff asserts presents the same problems, plus others because the duty here would also chill speech.

10, 2024) (denying certification)—is dispositive. Because Plaintiff cannot plausibly allege that sex with minors is a "necessary component" of Grindr's service— Plaintiff concedes Grindr forbids it, ER-171 ¶¶ 29, 35, ER-175 ¶ 49, ER-182 ¶ 85, ER-192–93 ¶¶ 161, 165—he cannot allege a duty. *See Dyroff*, 934 F.3d at 1095, 1100-01 (recommendations that "steered" plaintiff's son to meet man who harmed him insufficient to create misfeasance duty).

## C.     Plaintiff Fails To Allege Negligent Misrepresentation

In another attempt to plead around Section 230, Plaintiff alleges Grindr negligently "misrepresented that the Grindr App is designed to create a safe and secure environment for its users." ER-188 ¶ 135. The claim fails because Plaintiff has not stated a claim for negligence, *supra* Part III.B, nor does he satisfy the additional requirements of negligent misrepresentation, i.e., (1) the unreasonable misrepresentation of some fact, (2) with intent to induce the plaintiff's reliance on that fact, and (3) plaintiff's reasonable reliance on the misrepresentation. *See Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021) (citations omitted).

At the outset, Plaintiff has not alleged a misrepresentation of fact. An "opinion" expressing only Grindr's "judgment as to [the] quality" of its service's safety is "not grounds for a misrepresentation cause of action." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002) ("subjective statement as to the significance of a positive rating" not actionable). The statement is neither actionable nor something

on which Plaintiff could have reasonably relied, particularly because Grindr's Terms make clear Grindr does not verify users' identities, check backgrounds, or monitor communications. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (statements YouTube enables users to "speak freely" and "build community" not actionable). And indeed Plaintiff fails to allege any facts—and certainly none sufficient under Rule 9(b), *see Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017)—suggesting Grindr intended this statement to induce his reliance, or that he actually viewed and relied on this statement. *See Borman*, 59 Cal. App. 5th at 1060.

### D. Plaintiff Fails To Allege Proximate Causation

All of Plaintiffs' state-law claims also fail because Plaintiff has not adequately pled causation.

Plaintiff claims he "would not have connected with the four men who raped him but for" content Grindr permitted him to share and receive. ER-184 ¶ 103. But it is not enough that Grindr provided the generally available communications service criminals allegedly used to injure Plaintiff. Services that do "nothing more than create the condition that made [a plaintiff's] injuries possible" are "too remotely connected … to constitute their legal cause" under California law. *Modisette*, 30 Cal. App. 5th at 154. Apple was thus not a proximate cause for traffic deaths allegedly caused by the supposedly distracting and dangerous design of the iPhone's smartphone app. *Id.* at 154-55. Nor was Airbnb a proximate cause for nuisance

46

damages allegedly caused by users of its platform service. *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *2 (Cal. Ct. App. Aug. 10, 2017) (unpublished).

This Court's federal tort jurisprudence likewise rejects attempts to hold online "[c]ommunications services" liable as a proximate cause for all imaginable "ripples of harm" flowing from their use. *Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (failing to remove terrorist organization's content did not make Twitter a proximate cause of providing material support to that organization). Plaintiff's contrary argument would make every online service "liable for seemingly endless acts of modern violence simply because the individual viewed relevant social media content before deciding to commit the violence." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625-26 & 625 n.4 (6th Cir. 2019) (similar) (citing *Fields*, 881 F.3d at 749).[13]

Grindr's service is overwhelmingly used for lawful and beneficial purposes. That it may be abused by a small fraction of its users despite Grindr's efforts does not render Grindr the proximate cause of harms flowing from the misconduct of these third parties.

---

[13] These decisions follow the established principle that intervening criminal conduct is generally "the proximate cause of an injury, superseding any prior negligence" a plaintiff might otherwise allege. *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449 (1993). Dismissal on the pleadings is proper in these circumstances, as "the only reasonable conclusion" to draw from the intervening criminal conduct "is an absence of causation." *State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 353 (2015); *see also Kane v. Hartford Accident & Indem. Co.*, 98 Cal. App. 3d 350, 360-62 (1979) (affirming nonsuit dismissal before presentation of evidence).

## CONCLUSION

This Court should affirm the District Court's decision.

Respectfully submitted,

_s/ Adam S. Sieff_____          _s/ Ambika Kumar_____
Adam S. Sieff                                Ambika Kumar
DAVIS WRIGHT TREMAINE LLP                    DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor        920 Fifth Avenue, Suite 3300
Los Angeles, California 90017                Seattle, Washington 98104
Telephone: (213) 633-6800                    Telephone: (206) 622-3150
adamsieff@dwt.com                            ambikakumar@dwt.com

_Attorneys for Defendants-Appellees_

Dated: June 10, 2024

## CIRCUIT RULE 28-2.6 STATEMENT OF RELATED CASES

I am unaware of any related cases currently pending in this Court.

**Signature**:  s/ *Ambika Kumar*
                Ambika Kumar

**Date**: June 10, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s): 24-0475**

I am the attorney or self-represented party.

**This brief contains <u>11,829</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ *Ambika Kumar*_____     **Date** June 10, 2024
           Ambika Kumar

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 10, 2024           *s/ Ambika Kumar*
                                   Ambika Kumar